455 So.2d 762 (1984)
Marcus MARTIN
v.
Robert M. WINFIELD and Juanita Gayle Winfield.
No. 55065.
Supreme Court of Mississippi.
August 22, 1984.
Michael P. Younger, Johnston & Younger, Brandon, for appellant.
William H. Jones, Petal, for appellees.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the court:

I.
This action has been brought by the payees on a $16,800.00 sight draft made and delivered by an experienced lessee of oil and gas rights. The maker admits delivery of the draft and that it was intended as payment of the agreed-upon rental, but charges affirmatively that it was procured by fraudulent misrepresentation.
A Rankin County jury rejected the maker's fraud defense and returned a verdict in favor of the payee holders. Finding in the record substantial evidence supporting the verdict of the jury, we affirm.

II.

A.
Marcus E. Martin is an insurance agent and attorney who for the last 20 years has bought and sold gas and oil property. His general method of operation has been to locate an area where there is active leasing or oil and gas activity. He then contacts land owners and tells them that, whatever the highest offer is for the lease on their land, he, Martin, will pay them $10.00 more per acre than that offered. After acquiring a lease, Martin generally resells the lease to the large company which has bought up most of the area.
The Winfields had been making inquiries about the possible leasing of the oil, gas *763 and other minerals on lands owned by them in Simpson County, Mississippi. Martin heard about the availability of a lease on the Winfield property. Martin contacted Winfield by telephone.
Here the testimony begins to conflict. Martin says that he asked Mr. Winfield what his best bona fide offer for a lease on the property had been and that Winfield told him it was $200.00 per acre. Martin says that on the basis of this offer, he offered Winfield $210.00 per acre which Winfield accepted. Mr. Winfield's version of the negotiations is slightly different. First of all, it does not appear that Winfield is sensitive to the difference between a bona fide contractual offer for his minerals and a general estimate of the value of his minerals. Winfield says that he told Martin "it was between $150.00, $200.00, an acre". This statement by Winfield to Martin was apparently based on what he had been told by minerals leasing agent named Frank Prescatory.
Martin testified further that Winfield had assured him that leasing was going on in the section where the Winfields' land was situated, and that drilling was occurring within a mile of his property. Winfield testified that it was quite possible that he had relayed on to Martin such information regarding leases and drilling and that his belief in such information was based on what Mr. Prescatory had told him.
Through these negotiations, the stage was set. On January 25, 1982, Martin, purportedly relying upon representations regarding offers and leasing/drilling activity made by layman Winfield and having made no independent investigation of the matter, drove to a restaurant in Hattiesburg to close the deal. The Winfields, assuming they had reached a fair price for their lease with an experienced oil man, arrived at the same restaurant. The Winfields executed the mineral lease prepared by Martin and delivered it to Martin, who in exchange tendered to the Winfields a 15 day sight draft which provides as follows:
Upon approval of title but not later than 15 days after sight.
Martin went to the office of the Chancery Clerk of Simpson County to record the lease. When he got there, Martin asked about and found that there was no leasing or drilling activity whatsoever going on in the Winfields' area. Martin decided not to record the lease. In the days following, Martin contacted several oil leasing interests and inquired if they would be interested in buying the Winfield lease. He found no takers. During this same time, Martin cancelled payment on the draft he had given the Winfields. Martin never returned the executed lease to the Winfields nor did he tell them the lease was rescinded.

B.
On June 18, 1982, the Winfields commenced in the Circuit Court of Simpson County an action against Martin predicated on the unpaid sight draft. In due course thereafter, the venue was changed to Rankin County, Martin being a resident of that county. Martin then filed an answer denying the essential allegations of the complaint and setting up an affirmative defense of fraud.
Trial was held on August 18, 1983, in the Circuit Court of Rankin County, R.L. Goza presiding and sitting with a jury. That same day the jury returned a verdict in favor of the Winfields and against Martin in the full sum of $16,800.00.
Martin thereafter timely filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which was promptly overruled. On August 25, 1983, the Circuit Court entered final judgment on the jury's verdict. This appeal has followed, where Martin's sole complaint (though couched in four assignment of error) is that on the record before it the Circuit Court was required as a matter of law to sustain his affirmative defense of fraud.

III.
Reduced to its essence, this is an action by the payee of an instrument against its maker. On its face, the only condition in *764 the instrument is that title be approved. The record containing not the slightest suggestion of any defect in title, the Winfields, as payees and holders of the instrument, are entitled subject only to any defenses which may be available in law to enforce it against Martin according to its tenor. Cf. Figg v. Cupit, 401 So.2d 722 (Miss. 1981) (restriction in instrument pertains only to title).
Miss. Code Ann. § 75-3-306(b) (Supp. 1983) provides that Martin has "all defenses of any party which would be available in an action on a simple contract". Bank of Crystal Springs v. First National Bank of Jackson, 427 So.2d 968, 970 (Miss. 1983). One such defense is fraud in the procurement of the instrument. McCorkle v. Hughes, 244 So.2d 386, 388 (Miss. 1971); see also Austin v. Atlas Subsidiaries of Mississippi, Inc., 223 So.2d 297, 299 (Miss. 1969) (concurring opinion recognizing that fraud of payee would be defense in suit by payee against maker but not in suit by holder in due course). Cases under the Uniform Commercial Code from other states recognize fraud as a defense to an action by a holder/payee not a holder in due course. Viracola v. Dallas International Bank, 508 S.W.2d 472 (Tex.Civ.App. 1974); Thompson v. First National Bank and Trust Co., 142 Ga. App. 174, 235 S.E.2d 582 (1977), reversed on other grounds, 240 Ga. 494, 241 S.E.2d 253; Brown v. Scales, 109 Ga. App. 138, 135 S.E.2d 525 (1964).
Martin denies liability on the instrument via an affirmative defense of fraud. Martin charges that the Winfields made fraudulent misrepresentations which induced him to enter into the agreement and to execute and deliver the instrument sued upon.
The elements of a claim or defense of fraud in this state are well established. They include: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. Gardner v. State, 235 Miss. 119, 130, 108 So.2d 592, 594 (1959); see Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss. 1984) (citing Gardner on this issue); Johnson v. Brewer, 427 So.2d 118, 120-21 (Miss. 1983) (same); Franklin v. Lovitt Equipment Co., 420 So.2d 1370, 1373 (Miss. 1982) (same); Crawford v. Smith Brothers Lumber Co., 274 So.2d 675, 678 (Miss. 1973) (same); Anderson Dunham, Inc. v. Aiken, 241 Miss. 756, 761, 133 So.2d 527, 529 (1961) (same); see also Hamilton v. McGill, 352 So.2d 825, 831 (Miss. 1977) (formulation of fraud similar to Gardner); McMahon v. McMahon, 247 Miss. 822, 836, 157 So.2d 494, 499-500 (1963) (same).
Proving fraud is difficult, as it ought to be. Clear and convincing evidence is required. Cotton v. McConnell, 435 So.2d 683, 685-689 (Miss. 1983); Franklin v. Lovitt Equipment Co., Inc., 420 So.2d 1370, 1373 (Miss. 1982).
Here Martin has an even more difficult hill to climb in that he is appealing from an adverse jury verdict. Fraud is essentially a question of fact. Specifically, our question is whether Martin has proved by clear and convincing evidence the nine elements of his affirmative defense. On review we must presume that all conflicts in the evidence have been resolved in favor of the Winfields. City of Jackson v. Locklar, 431 So.2d 475, 478-79 (Miss. 1983); Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 656-57 (Miss. 1975); General Tire & Rubber Co. v. Darnell, 221 So.2d 104, 105-07 (Miss. 1969). The question is not whether we think Martin was defrauded but whether the evidence of fraud is so clear that no hypothetical reasonable juror hearing the proof could conclude otherwise.
Considering the facts as we must in the light most favorable to the Winfields, there are any number of the elements of fraud Martin has not established. For example, Winfield thought Martin was asking the general value of the oil, gas and minerals beneath the surface of his property and *765 thought he was merely giving a value estimate when he told Martin "it was between $150, $200 an acre". The evidence does not establish without dispute that Winfield represented that he had received a bona fide offer of $200 per acre.
The elements of materiality (# 3) and intent-to-deceive (# 5) are also highly debatable. The application of these two elements to the representations made by the Winfields to Martin is dependent upon the assumption that the Winfields thoroughly understood the mineral-leasing business practices employed by Martin. The Winfields would need to understand not just that Martin bought leases from people who had been made offers in areas where leasing and drilling was going on, but they would also have to understand the rationale for Martin's pricing, the geological basis for his distance restrictions, the financial interactions which take place between lease holders in the same area, and other general mineral-leasing practices. Martin failed to prove any such understanding on the part of the Winfields. In this context, it is unreasonable to believe that the Winfields had any idea that their representations were of significance or that they made these representations for the purpose of fraudulently inducing Martin to enter the lease. In any event the evidence at worst (from the Winfields' standpoint) created a jury issue.
Look further at the matter of Martin's right to rely upon representations made by the Winfields (element #8). We have frequently considered fraud cases where persons with special knowledge or expertise employ sharp practices and deceptions to take advantage of unknowledgeable victims.
"... this Court has been liberal in reviewing transactions, where one party might have the advantage over another in experience, knowledge, and wisdom, to determine whether an overreaching, deceit or fraud has been practiced on the disadvantaged person. In the case of Fornea v. Goodyear Yellow Pine Co., 181 Miss. 50, 178 So. 914 (1938), this Court said:
In the light of the fact that people are not prudent, and may at times be unjustifiably imposed upon, this Court has been liberal in reviewing transactions where one party might have the advantage over another party in experience, knowledge, and wisdom; but in the absence of fraud, deceit, or fiduciary relations of some kind, the Court cannot relieve a person from the consequences of his acts merely because he had not acted prudently or diligently about his contracts or other matters. (181 Miss. at 65-66, 178 So. at 918). (Emphasis added)."
Parker v. Howarth, 340 So.2d 434, 437 (Miss. 1976); see also Johnson v. Brewer, 427 So.2d 118, 119 (Miss. 1983) (25-year old Millsaps graduate with several years experience with oil and gas companies dealing with 80-year old man with a sixth grade education and limited reading ability); Hunt Oil Co. v. Berry, 227 Miss. 234, 244-45, 86 So.2d 7, 10-11 (1956) (oil company agent inaccurately explained lease to man who "couldn't understand by a reading of it").
The irony in this case is that Martin, an attorney with 20 years experience in the mineral leasing business, claims he was defrauded by a housewife and her husband who has a twelfth grade education, works at Enterprise Products in Petal, Mississippi, and inherited the property in question from his grandmother. Martin  the party who can by telephone consult regarding drilling and leasing with A.A. Energy Fuels, Browning and Welch, Petroleums Management, Hunt Petroleum, Callon Petroleum, and Energetics  undertook no independent investigation on his own but relied solely upon the representations by the Winfields. There is no evidence that Martin after hearing these representations inquired of the Winfields what was the basis for their statement nor did he directly emphasize to them that these representations were crucial to his desire to obtain a mineral lease for their property. That Martin *766 discovered the true situation by a mere visit to the Simpson County courthouse shows how easily Martin could have protected himself against his present plight.
In summary, we hold that the evidence adduced at trial was such that, when viewed in the light most favorable to the Winfields, we cannot say that the minds of reasonable jurors could not have reached the conclusion that Martin failed to prove by clear and convincing evidence one or more of the elements of his affirmative defense of fraud. No other defense having been tendered by Martin, the Winfields are entitled to judgment on the instrument according to its tenor. The judgment of the Circuit Court to that effect will be affirmed.
For the sake of continuity in the law, we note that today's holding that the jury verdict in favor of the Winfields is sufficient to withstand Martin's appellate attack, is consistent with our prior holdings in fraud cases. Compare Crawford v. Smith Brothers Lumber Co., 274 So.2d 675, 678 (Miss. 1973) (no fraud could be claimed by purchaser who relied on quantity estimates in prospectus once specifically told that there was no guarantee on the quantity of timber) with Johnson v. Brewer, 427 So.2d 118, 120, 127 (Miss. 1983) (fraud found where oil expert misrepresented lease to old man who could not read); First American National Bank of Iuka v. Mitchell, 359 So.2d 1376, 1377-79 (Miss. 1978) (fraud found where bank officer altered loan terms to force debtor to sell property); Baggett v. Furst Corp., 357 So.2d 321, 322-23 (Miss. 1978) (fraud found where corporate officer misrepresented that the deed contained the same provisions as the prior agreement); Parker v. Howarth, 340 So.2d 434, 437 (Miss. 1976) (fraud found when insurance adjuster had indigent, illiterate man sign release while in the hospital under medication); Hunt Oil Co. v. Berry, 227 Miss. 234, 244-45, 86 So.2d 7, 10-11 (1956) (fraud found where oil company agent misrepresented lease to property owner who could not understand lease by reading it); Mississippi Power Co. v. Bennett, 173 Miss. 109, 128-29, 161 So. 301, 306 (1935) (fraud found where company promised to refund invested money but never intended to do so).
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.