512 So.2d 672 (1987)
BECK ENTERPRISES, INC. d/b/a Johnny Beck's Sales & Service & Coast Financial Services, Inc.
v.
Pamela HESTER & Jimmy Hester.
No. 56905.
Supreme Court of Mississippi.
August 19, 1987.
James W. Wilson, Biloxi, for appellant.
David P. Oliver, Gulfport, for appellee.
Before WALKER, C.J., and PRATHER and SULLIVAN, JJ.

ON PETITION FOR REHEARING
PRATHER, Justice, for the Court:
The opinion rendered in this cause on May 13, 1987, is withdrawn and the following is substituted as the opinion of the Court:
Purchasers of a used pickup truck brought this suit in the Circuit Court of Jackson County alleging a dual basis for recovery: (1) fraud and (2) breach of implied warranty of merchantability. From a judgment in favor of Jimmy and Pamela Hester, awarding $3,433.00 in actual damages, the defendant seller, Beck Enterprises, Inc. d/b/a Johnny Beck's Sales and Service (hereafter Beck) and the finance *674 company, Coast Financial Services, perfect this appeal and assign as error the following:
(1) The circuit court erred in failing to direct a verdict for the defendant, Beck Enterprises, Inc.
(2) The verdict of the jury is contrary to the law and the great weight of the evidence.
(3) The circuit court erred in failing to direct a verdict for the defendant, Coast Financial Services, Inc.

I.
On February 29, 1984, Jimmy and Pamela Hester purchased a 1980 Ford Ranger truck with 55,000 miles from Johnny Beck's Sales & Service in Ocean Springs, Mississippi. The Hesters financed $5,083.98 of the purchase price of $6,800.00 with Coast Financial Services, Inc., of which Johnny Beck was president.
The used truck purchased by the Hesters came with a twelve month, unlimited mileage express warranty. The limited warranty warranted mechanical repairs to the vehicle at a discount for parts and labor.
According to the Hesters, John Boyer, the salesman who sold the truck for Johnny Beck, told them the truck was in excellent shape and that he knew of it personally because it was purchased by Beck from a friend of Boyer's. In fact, however, the truck was bought by Beck at the Gulfport Auto Auction.
Several days after they purchased the truck, the Hesters had to replace the inner and outer wheel bearings. Hester notified Beck of this problem, but elected to repair the truck himself because he considered it a "minor thing." Mr. Hester paid approximately $25.00 for the parts. Later, in May of 1984, the engine in the truck had to be replaced because the rod-bearings in the engine had previously been installed incorrectly. The replacement of the engine was performed by Johnny Beck's Sales & Service in accordance with the limited warranty. The Hesters were charged $608.93 for the material but nothing for the labor.
Beginning in June of 1984, the Hesters endured a series of mechanical failures to the truck that required repair or replacement of the drive shaft, transmission, fuel pump, water pump, master cylinder, and the brakes. The Hesters incurred approximately $150.00 expense for parts and approximately $200.00 for labor performed by Pamela Hester's brother-in-law Rick Litsey. The prior engine problem and the contemplation of a lawsuit by Hester influenced the Hesters not to take the truck to Johnny Beck for repairs under the limited warranty.
In August, 1984, the Hesters filed their complaint in the Circuit Court of Jackson County against Beck Enterprises, Inc., d/b/a Johnny Beck's Sales & Service and Coastal Financial Services, Inc. The Hesters demanded relief of $5,083.98 from Beck Enterprises, Inc., $25,000.00 punitive damages from both defendants, rescission of the contract with both defendants, and restitution of $1,171.05 in pretrial interest from Coastal Financial Services, Inc.[1] In a jury trial, the Hesters were awarded actual damages of $3,433.00 and punitive damages of $750.00. The trial judge granted a judgment notwithstanding the verdict on the issue of punitive damages.
Originally in their complaint, the Hesters utilized a fraud theory of recovery. During the trial, the Hesters were allowed to orally amend the complaint to add the allegation of breach of implied warranty.

II.
This suit is grounded in the Uniform Commercial Code as well as non-code common law principles.[2] The Court notes that among the general principles stated in the code is Miss. Code Ann. § 75-1-103 (1972) providing that common law principles of *675 fraud and misrepresentation supplement the code provisions as follows:
Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principle and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions. (Emphasis added)
Franklin v. Lovitt Equipment Co. Inc., 420 So.2d 1370 (Miss. 1982).

A. Fraud Theory

The elements of a claim of fraud are well established as follows: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's interest that it should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984) and cases cited therein. In addition, proof of fraud must be by clear and convincing evidence. Id. See Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983).
In a case such as the instant case, a plaintiff who successfully proves fraud is entitled to numerous remedies. Under traditional tort law, the winning party may rescind the contract and be put in status quo by recovery of the purchase price. Also, the successful party may invoke the provisions of the Uniform Commercial Code in Miss. Code Ann. § 75-2-721 (1972) which provides:
Remedies for material misrepresentation or fraud include all remedies available under this chapter for nonfraudulent breach. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.
See Bryan Construction Co. Inc. v. Thad Ryan Cadillac, Inc., 300 So.2d 444 (Miss. 1974).
The damages available under the UCC include, but are not limited to, compensatory damages under Miss. Code Ann. § 75-2-714 (1972), incidental damages under § 75-2-715(1), and consequential damages under § 75-2-715(2). Id. at 448.
Additionally, in a fraud case, punitive damages are assessable "upon a showing of willful and intentional wrong, or for such gross negligence or reckless conduct as is equivalent to such wrong." Gardner v. Jones, 464 So.2d 1144, 1149 (Miss. 1985) quoting Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 460 (Miss. 1983).

B. Implied Warranty of Merchantability Theory

Miss. Code Ann. § 75-2-314 (1972) provides in part:
(1) A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section, the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
(2) Goods to be merchantable must be at least such as
.....
(c) are fit for the ordinary purposes for which such goods are used.
No question is raised regarding the seller's status as a "merchant with respect to" the sale of a truck. The only question is the applicability of implied warranties to the sale of used motored vehicles.
Numerous jurisdictions have held that an implied warranty of merchantability may arise in the sale of used goods. See e.g., Dickerson v. Mountain View Equipment Co., 109 Idaho 711, 710 P.2d 621 (Ct.App. 1985) (used tractor); Brazeal v. Craig, 683 S.W.2d 329 (Mo. Ct. App. 1984) (rebuilt transmission); Dale v. King Lincoln-Mercury, Inc., 234 Kan. 840, 676 P.2d 744 (1984) (used automobile); Jackson v. H. Frank Olds, Inc., 65 Ill. App.3d 571, 22 Ill.Dec. 230, 382 N.E.2d 550 (1978) (used automobile); Chamberlain v. Bob Matick Chevrolet, *676 Inc., 4 Conn.Cir. 685, 239 A.2d 42 (1967) (used automobile). Contra: Southerland v. Northeast Datsun, Inc., 659 S.W.2d 889 (Tex. Ct. App. 1983). In Mississippi, Bryan Construction Co., Inc. v. Thad Ryan Cadillac, Inc., 300 So.2d 444 (Miss. 1974) dealt with a used motor vehicle, but the applicability of the UCC implied warranty of merchantability to used vehicles was not challenged. The UCC clearly furnishes the answer in § 75-2-105 defining "goods" as:
"Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2-107) [§ 75-2-107].
This Court concludes the UCC does not distinguish between new and used "goods" and that the implied warranty of merchantability applies to the sale of a used motor vehicle by a "merchant with respect to goods of that kind."
"The implied warranty of merchantability is not intended to guarantee that the goods be the best or of the highest quality  the standard is measured by the generally acceptable quality under the description used in the contract." Dickerson, 710 P.2d at 624. If a product conforms to the quality of other similar products in the market, it will normally be merchantable. White & Summers, Uniform Commercial Code § 9-7 (2d ed. 1980). See also, Uniform Commercial Code § 2-314, Official Comment 3 ("A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description.")
Merchantability is different for new and used goods of the same type. Used goods are reasonably expected to require more maintenance and repair and their quality should not be measured on the same scale as that of new goods. Used goods should be compared to similar used goods. If they conform to the quality of other similar used goods, they will normally be merchantable.
Another point of interest is that the implied warranty of merchantability may not be waived or disclaimed in Mississippi. Miss. Code Ann. § 11-7-18 (1972); Miss. Code Ann. § 75-2-719(4) (1972). See also, Editor's note to Miss. Code Ann. § 75-2-314 (1972) proclaiming the Mississippi Legislature's intent to prohibit the exclusion or modification of the implied warranty of merchantability.

III.
When a buyer has accepted goods[3] and subsequently discovers a breach of the implied warranty of merchantability, the buyer may invoke Miss. Code Ann. § 75-2-608 (1972) which provides conditions for the buyer to revoke acceptance. The conditions are set out as follows:
(1) [A] nonconformity which substantially impairs the value of the "lot or commercial unit;" (2) acceptance (a) (with discovery of the defect) on the reasonable assumption that the nonconformity would be cured or (b) (without discovery) reasonably induced by the difficulty of the the discovery or by seller's assurances; (3) revocation within a reasonable time after the nonconformity was discovered or should have been discovered; and (4) revocation before a substantial change occurs in the condition of the goods not caused by their own defects.
White and Summers, supra § 8-3, p. 303. Rester v. Morrow, 491 So.2d 204, 210 (Miss. 1986).
Once acceptance has been properly revoked[4], the buyer may cancel the contract and recover so much of the price as has been paid. Miss. Code Ann. § 75-2-711(1) (1972).[5]
*677 In addition to the remedies described above, a buyer who successfully sues for breach of warranty may recover litigation expenses under the Magnuson-Moss Warranty Act codified at 15 U.S.C. § 2301-2312 (1982). Section 2310(d)(2) of 15 U.S.C. provides:
If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

IV.
It is important to note the jury was instructed on fraud and breach of implied warranty theories of recovery. The burden of proof described in the fraud instruction was "clear and convincing evidence" while the burden of proof in the implied warranty instruction was "preponderance of the evidence." The record does not reflect which theory of recovery the jury accepted, however jury instruction 6 read in part:
Therefore you will not allow any punitive damages in this case unless you find that the Defendants unlawfully made a material misrepresentation concerning the 1980 Ford F-100 P/K, and that the Defendants knew that said representation was false and made said representation to deceive the Plaintiffs, and that said representation was malicious and wrongful and injured the said Plaintiffs; then you shall award punitive damages to the Plaintiffs.
The award of punitive damages is consistent with a finding of fraud.

V.

Was Beck Enterprises, Inc. entitled to a directed verdict?
Appellant Beck contends it was entitled to a directed verdict because the Hesters allegedly failed to prove that Beck had been notified of any breach of warranty as required by Miss. Code Ann. § 75-2-607(3)(a) or had been given an opportunity to cure the defects as allowed by § 75-2-508. Appellant Beck also contends that the Hesters failed to prove the value of the truck had been substantially impaired, a requirement for proper revocation of acceptance. See Miss. Code Ann. § 75-2-608 (1972).
All of Beck's arguments under this assignment of error concern the Hesters' remedy for breach of implied warranty. This Court agrees with appellant that the requirements of § 75-2-608 are lacking. But as previously mentioned, the Hesters employed two theories of recovery  breach of implied warranty and fraud. Beck makes no argument concerning a directed verdict on the issue of fraud. The Court holds there was sufficient evidence on disputed testimony to present a jury question on the issue of common law fraud. Therefore, this assignment of error is without merit regarding the fraud basis of recovery.

VI.

Was the verdict contrary to law and against the weight of the evidence?
Again Beck and Coast Financial Services, Inc. direct their argument toward the breach of implied warranty theory, while totally ignoring the jury verdict on the basis of fraud. The record demonstrates the verdict is not against the weight of the evidence on the theory of fraud, and as a jury issue, the answer was decided against the appellants.
Appellants also attack the amount of damages awarded, contending the proper damages would have been the difference in the value of the truck at the time of acceptance and the value as warranted. The appellants are mistaken.
*678 Under Miss. Code Ann. § 75-2-721 (1972) a party successfully proving fraud may resort to any remedy under Chapter 2 of the Uniform Commercial Code. Those damages include compensatory damages, incidental damages, and consequential damages. The $3,433.00 actual damages awarded to the Hesters were approximately equal to the value of their trade-in, plus the amount of payments made on the purchased truck, plus the cost of repairs to the purchased truck. This Court holds the actual damages were proper.

VII.

Was Coast Financial Services, Inc. entitled to a directed verdict?
Appellant Coast Financial Services, Inc. contends it is a wholly separate business corporation from Johnny Beck's Sales & Service and therefore should not have been subject to suit for any wrongdoing on the part of Johnny Beck's Sales & Service.
The finance contract between Coast Financial Services and the Hesters contains the following provision in bold print:
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
The quoted provision is required by 16 Code of Federal Regulations § 433.2 (1986) to prevent a practice known as "body dragging." The practice arises when a merchant, desiring to circumvent the restrictions upon the holder in due course doctrine, arranges for a consumer purchase to be financed by a cooperating financing agency. The resulting financial transaction has the appearance of a direct cash loan, payment of which can be enforced by the loan company without reference to the underlying transaction. In such a transaction, the defrauded consumer would have no remedy against the lender. The import of 16 C.F.R. § 433.2 (1986) is to prevent direct-loan financing from foreclosing a consumer's equities in credit sales.
Coast Financial Services also contends that 16 C.F.R. § 433.2 (1986) should not apply in the present case because the chapter of the U.S.Code under which it was promulgated, Chapter 41 Consumer Credit Protection, exempts transactions primarily for business or commercial purposes. See, 15 U.S.C. § 1603 (1982).
The testimony at trial proved that Mr. Hester was a sheetrock hanger and that he bought the truck to transport himself and his tools, but not sheetrock, to job locations. The testimony also showed that the purchased truck was the primary transportation for both Mr. and Mrs. Hester and it was used for personal and family purposes. In addition, the Hesters were not in the business of transporting goods in the truck for payment.
Numerous federal courts of appeal have held that a transaction should be viewed as a whole in determining whether it was entered for business or commercial purposes. Tower v. Home Construction Co., 625 F.2d 1161, 1166 (5th Cir.1980); Gallegos v. Stokes, 593 F.2d 372, 375 (10th Cir.1979).
Viewing the Hester transaction as a whole, this Court holds that the transaction here was not entered for primarily business or commercial purposes as contemplated by the exceptions found in 15 U.S.C. § 1603 (1982). Therefore, Coast Financial Services, Inc. was subject to the same claims as Johnny Beck's Sales & Service not exceeding the amount paid by the Hesters under their contract with Coast Financial Services.

VIII.
Finding no reversible error, this Court affirms the jury award of $3,433.00 in actual damages on the basis of the fraud theory of recovery.
There was no cross-appeal and no cross-assignment of error as to the judgment notwithstanding the verdict on the issue of punitive damages. This Court will not consider issues not raised on direct appeal or *679 on cross-appeal by an appellee. Maupin v. Estate of Perry, 396 So.2d 613, 616 (Miss. 1981).
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] This suit was filed prior to the effective date of the Motor Vehicle Warranty Enforcement Act codified in Miss. Code Ann. § 63-17-151 to 165 (Supp. 1986).
[2] Miss. Code Ann. § 11-7-36, effective 3/5/74, clearly permits the pleading of contract grounds as well as tort grounds in one complaint. This procedural statute was carried forward in M.R.C.P. 8, effective January 1, 1982.
[3] Acceptance is defined in § 75-2-606 (1972).
[4] See Miss. Code Ann. § 75-2-608 (1972) for proper forms of notice of revocation.
[5] Revocation of acceptance and recovery of payments made is distinguished by White and Summers, supra, at p. 375 from accepting nonconforming goods and suing for damages under Miss. Code Ann. § 75-2-714 (1972).