# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CT-02025-SCT

*IN RE: ESTATE OF WILLIAM GEORGE LAW,*
*DECEASED: DOLORES CLUNEY a/k/a DOLORES LAW*

*v.*

*JOHN DAVID LAW, ADMINISTRATOR*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/9/2000 |
| TRIAL JUDGE: | HON. JACQUELINE ESTES MASK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | C. MICHAEL MALSKI |
| ATTORNEY FOR APPELLEE: | J. DUDLEY WILLIAMS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. - 04/08/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     The chancellor set aside as fraudulent a deed from George Law, John David Law's father, to Dolores Cluney (a.k.a. Delores), a woman believed to be his wife. After George Law died, it was discovered that Dolores Cluney was still married to her previous husband and that she had misrepresented herself to George Law and the court. Cluney appealed, and the Court of Appeals reversed and rendered,

6-3, finding that there was no evidence George Law conveyed the deed because he thought he was married to Cluney. *In re Estate of Law*, 852 So. 2d 33 (Miss. Ct. App. 2002). This Court granted certiorari to consider whether the Court of Appeals erred in deciding the case. We reverse the judgment of the Court of Appeals and affirm the chancellor's judgment.

## FACTS AND PROCEEDINGS
## IN THE TRIAL COURT AND THE COURT OF APPEALS

¶2.     George Law met Dolores Cluney in 1992 a few years after his wife died. Cluney apparently lived near him in a small trailer and frequently borrowed items such as sugar, cigarettes or the telephone. In September 1992, Law, 73, and Cluney, 40, began living together, and in 1994 they participated in a marriage ceremony. On the marriage license application, Cluney represented herself to be Dolores Spadoni and indicated she had never been married. Shortly after the wedding, Cluney temporarily left Law and upon her return he deeded her a survivorship interest in his house and the surrounding one-acre lot. Law died intestate in 1999, and additional acreage he owned was inherited by his children. Law's son, John David Law (John Law), was appointed administrator of the estate, and he petitioned the court to have the deed set aside and the marriage declared void.

¶3.     Initially, John Law was not aware of Cluney's bigamy. Cluney apparently tried to keep her past well-hidden even from the court, and the record reflects numerous blatant acts of perjury. With absolutely no cooperation from Cluney, who had been using the name Dolores Spadoni Law, the truth finally unfolded to reveal that she had been legally married to Raymond Cluney since 1972 and that she had represented herself in court documents to be the common-law wife of a second man, Timothy Wayne Johnson, whom she tried to have committed in 1992. The record reflects that this information only became known when

2

a secretary for John Law's attorney recognized Dolores and then remembered Johnson's name from a lunacy proceeding. When first confronted with the truth, Cluney denied she was Dolores Cluney or that she was involved in the commitment action against Johnson, but, after being confronted indisputable evidence in a much later proceeding, she admitted she was the same person. Since Cluney's marriage to George Law was void, the chancellor granted partial summary judgment and set aside all of her inheritance rights. At a later trial, the chancellor set aside the deed conveying the house and established a constructive trust for the benefit of the heirs. Cluney appealed, and the Court of Appeals reversed and rendered, finding the element of George Law's reliance on the marriage in conveying the deed was not proven.

## ANALYSIS

¶4.    John Law asserts that the Court of Appeals erred in holding that the chancellor's findings on the issue of reliance were manifestly wrong. As noted by the Court of Appeals, the factors for setting aside a conveyance based on fraud have previously been set out by this court.

> The elements of fraud, which must be proven by clear and convincing evidence, include: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury.

*Levens v. Campbell*, 733 So. 2d 753, 761-62 (Miss. 1999). *See also **Spragins v. Sunburst Bank**,* 605 So. 2d 777 (Miss. 1992); ***Martin v. Winfield**,* 455 So. 2d 762 (Miss. 1984).

¶5.    The Court of Appeals reweighed the evidence supporting the elements of fraud after finding that the chancellor quoted them in her opinion, but did not make a specific finding on all of them.

> Proof of the elements of fraud must be by clear and convincing evidence. *Id.* at 761. We look to the record to determine what evidence existed on these factors. Though there are not findings on each factor, we can in a non-domestic relations case imply the findings on contested evidence necessary to uphold the decision unless there are indications that the chancellor was not applying the correct legal principles. ***Watson v. Lillard**,* 493 So. 2d

3

1277, 1279 (Miss. 1986)("where the trial judge did not make specific findings of fact with regard to controverted issues, this Court will assume that the trial judge made all findings of fact that were necessary to support his verdict"). The chancellor set out these same factors as being necessary for proof of fraud, then found that fraud was proven. Therefore, we will imply the necessary findings if there is evidence to support them.

*In re Estate of Law,* 852 So. 2d at 36 (¶ 10).

¶6.     This Court found specifically in *Watson*:

That this Court will not disturb a trial judge's finding on appeal unless it is manifestly wrong is a doctrine too well known to require citation. Moreover, in a case like the present one, where the trial judge did not make specific findings of fact with regard to controverted issues, this Court will assume that the trial judge made all findings of fact that were necessary to support his verdict.

493 So.2d at 1279 (citations omitted).

¶7.     In the case sub judice, the chancellor found:

Based on the totality of the situation and the credible proof, Delores made a false representation as to her marital status and this representation was material to George deeding an interest in his real property to her. It was only after six months of a purported marriage that a deed was executed and the deed itself refers to Delores as George's wife in two locations in the document.

Where one party (in this case, Delores) knows of an impediment to marriage and practices a fraud on the other, (George), there is no reason why this fraud should not vitiate the gift.

Accordingly, this Court grants the relief requested and does hereby set aside the transfer based on fraud from George and Delores to George and Delores to the following described property. . . .

In granting this relief, the Court proceeds on the ground that the transaction should never have taken place, so that the title to this property would stand as if the transaction had never occurred.

On several occasions, Delores swore to tell the truth and proceeded to deny her marriage to Cluney. On one of these occasions, Delores was testifying before this Court and was given many opportunities to correct her misrepresentations.
This Court is called upon to fairly and impartially dispense justice on a daily basis relying upon information provided through testimony in open Court. Therefore, to rule otherwise in this cause would undermine the integrity of the entire Court system. Justice is founded

4

upon the truth. Without this truth, our system would be a complete farce and cease to dispense justice. To allow Delores to realize personal gain after exhibiting a blatant disregard for the truth would be the epitome of injustice, exactly what this Court strives to avoid.

¶8. The trial court based its decision on the evidence as a whole and made a specific finding of reliance as noted in the language above. However, the Court of Appeals found that the chancellor did not make all findings of fact necessary to support the decision. The Court of Appeals then reanalyzed the elements of fraud and found sufficient evidence to support each element except for that of reliance. However, that analysis was improper.

> To prevail on this element it must be shown that Law relied on the misrepresentation. Not every spoken untruth is actionable as fraud. It is only if that untruth by design and effect induced the hearer to change his position in justifiable reliance on the information. *McGee v. Swarek*, 733 So. 2d 308, 312 (Miss. Ct. App. 1998). There is no direct evidence that Law conveyed the residence only because he thought Cluney was his wife. Mr. Law's sister testified that he had told her after the wedding that he would convey Cluney his house because he was not able to care for himself. The implication was that the conveyance was in exchange or in gratitude for the care that she was providing, which included cooking, cleaning, and other household chores. She also stated this:
> Q. [D]id [Law] ever make the statement to you because Dolores is my wife, I am deeding her the property?
> A. No, sir, no, sir.
> Q. What did he tell you or why did he tell you he was deeding the property to Dolores?
> A. Because -- so that she would take care of him until he died.
> Mr. Law's aunt also testified. She stated that even before the ineffective ceremony took place, Law stated that he wanted Dolores to have his residence.
> There was no other evidence about Law's intentions, state of mind, or other relevant fact in determining why he would want to convey the property to Cluney. The chancellor made a finding that the misrepresentation was material to Law. We interpret that finding as meaning that Law relied on the existing of the marriage in deciding the execute the deed. We accept that proof of reliance could be through inferences. That the marriage was not important to the decision also can arise from inferences.

*In re Estate of Law,* 852 So.2d at 38 (¶¶ 20-22).

¶9.     The Court of Appeals used implications and inferences most favorable to Cluney in order to find that the element of reliance was not proven.  That finding is erroneous.  As previously addressed, the assumption is that the trial court made sufficient findings of fact to support its decision.  Beyond that, the suppositions  that the marriage was not important to the grantor's decision and that the conveyance was consideration for household services defy other established standards of law, not to mention common sense and logic.

¶10.    If the grantor had strictly intended to enter into a contract where in Cluney provided household services and he, in turn, conveyed his house to Cluney as payment, then he could have done that.  He did not.  The record reflects that the parties had an intimate relationship.  The record also reflects that George Law was in bad health from the beginning of the relationship.  He did not convey the house to her until after the marriage and then he conveyed it to his "wife," as he believed her to be.  Cluney admits and the record reflects that George Law had no knowledge of Cluney's prior marriage.  One cannot assume that George Law would have even been involved with Cluney at all had he known that she was still married, much less that he would have left his home to her.

¶11.    Common sense dictates that a man involved in a serious intimate relationship with a woman that results in marriage is not going to leave a house to her and her heirs when she defrauded him and knew the marriage was invalid.  If Cluney were to die, her heirs, including any lawful husband, would get the house.  That lends itself to the argument that George Law was so gracious to Cluney for her household services that he would rather risk his home ending up in the possession of people the record establishes he did not even know rather than in that of his own children.  The record also indicates that George Law's eldest son actually helped his parents, George Law and the late Geraldine Law, purchase the house in question and that the younger siblings were raised there.  The only reasonable  inference is that George Law relied on

6

the marriage in his decision to convey the house to Cluney and waited to execute the warranty deed after such took place more than a year later.

¶12.    Additionally, the Court of Appeals sets out in the quote above that George Law's aunt, Rozema Munn, testified that he told her before the "marriage" ceremony that he wanted Cluney to have the house. That lends itself even more to the implication that he relied on the marriage because he did not actually deed the house until after they were married.  George Law's sister, Katherine Bowen, who also testified that he was leaving the house to Cluney because she helped him, is close to Cluney and has been appointed to assist Cluney with her social security benefits and has an interest in land situated near the house.  Both of these women  also testified that they had no knowledge of Cluney's marital status.

¶13.    The record in its entirety lends credence to the likelihood that Cluney was determined to obtain George Law's property.  Before the truth was discovered, Cluney attempted to lay claim to  additional property, including one year's support of $12,000, as set out in her "widow's" response.  Additionally, she attempted to have the appointment of John Law as administrator set aside and herself appointed in his stead.  Cluney attempted to defraud everyone, including George Law, his children, the court, even her own lawyer, for an extended period of time.  Cluney's actions were more than a mere misrepresentation.

**CONCLUSION**

¶14.    Accordingly, we find that the trial court made sufficient findings of fact to support its decision, and the Court of Appeals erred in concluding otherwise.   We reverse  that the Court of Appeals' judgment reversing the Chancery Court of Monroe County and reinstating the deed.  In doing so, we affirm the judgment of the Chancery Court of Monroe County setting aside the fraudulent conveyance.

¶15.  **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED.**

**SMITH, C.J., WALLER, P.J., AND CARLSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, J., AND IN PART BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.**

**COBB, PRESIDING JUSTICE, DISSENTING:**

¶16.    As stated by the majority, the Court of Appeals reversed the chancellor's judgment, finding that fraud had not been proven by clear and convincing evidence. The majority concludes that the Court of Appeals' analysis was improper because it used implications and inferences most favorable to Dolores Cluney in order to find that one of the elements of fraud was not proven. In my view, the Court of Appeals reached the right conclusion, but improperly used inferences to find that several elements of fraud did exist. Thus, I must respectfully dissent.

¶17.    I write to clarify and correct the holding of the Court of Appeals for three reasons. First, I agree with the Court of Appeals that John Law failed to prove the elements of fraud by clear and convincing evidence. However, several of the fraud elements were not even proven by a preponderance of the evidence, because no evidence of these elements was presented at all.

¶18.    Second, although the majority concedes that the trial court failed to make specific findings as to the elements of fraud, it asserts that "the assumption is that the trial court made sufficient findings of fact to support its decision." When the record contains no evidence from which to assume sufficient findings of fact, this position is contrary to well established Mississippi law. "Fraud is never to be presumed or inferred, but must be proven by clear and convincing evidence." ***Boling v. A-1 Detective & Patrol Serv., Inc.***, 659 So.2d 586, 590 (Miss. 1995) (citing ***Nichols v. Tri-State Brick and Tile, Co.***, 608 So.2d 324, 330 (Miss. 1992)). On appeal, the appellate court may reverse if substantial evidence does not support the findings of fact.

¶19. Finally, witnesses for Cluney provided substantial evidence that although Cluney had nothing when she met George Law, she helped him in a number of ways by caring for him in bad health, and providing companionship to a lonely old man. The evidence shows that George wanted Cluney to have a home after he died and deeded her a survivorship interest in his home in return for her caring for him until he died. With regard to the fraud elements for which the administrator supplied no opposing evidence, this testimony supports a ruling that fraud has not been proved by clear and convincing evidence.

¶20. This Court will not disturb a chancellor's findings of fact unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard. *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss. 1990). When a chancellor's findings are supported by substantial, credible evidence in the record we will not reverse. *Branton v. Branton*, 559 So.2d 1038, 1042 (Miss. 1990). But it is our responsibility to ensure that the trial court's findings of fact conform to the required standard of proof. The chancellor correctly acknowledged that it is well settled law in this state that in the absence of fraud a voluntary conveyance cannot be set aside. *Campbell v. State Highway Comm'n*, 212 Miss. 437, 54 So.2d 654 (1951). As stated in *Martin v. Winfield,* 455 So.2d 762, 764 (Miss. 1984), "proving fraud is difficult, as it ought to be. Clear and convincing evidence is required." *Id.* (citing *Cotton v. McConnell*, 435 So.2d 683, 685-89 (Miss. 1983); *Franklin v. Lovitt Equipment Co.* 420 So.2d 1370, 1373 (Miss. 1982)).

¶21. A review of the record and testimony from the hearing on the issue of fraud shows that many of the elements were not proven by clear and convincing evidence. As discussed in the majority opinion, the elements of fraud are well established: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7)

9

the hearer's reliance on the truth; (8) the hearer's right to rely thereon; (9) and his or her consequent and proximate injury. *See, e.g.*, **Martin v. Winfield**, 455 So.2d at 764; **Hamilton v. McGill**, 352 So.2d 825, 831 (Miss. 1977); **Crawford v. Smith Bros. Lumber Co.**, 274 So.2d 675, 678 (Miss. 1973).

¶22.     There is no doubt that the first two elements of fraud were proven. Cluney even stipulated that she was not legally married to George Law because she had not obtained a divorce from her first husband prior to her marriage to George and that she had concealed the prior marriage and lack of a divorce from George.[1]  As to the remaining elements of fraud, there was scant evidence produced at trial.

¶23.     John Law, the party alleging fraud, called two witnesses. The first was his brother, Bill Law, the oldest of six children, who had lived in Kansas for the past 20 years. None of his testimony related to elements three through nine of fraud, but generally concerned background information.[2]  From this, John Law's attorney seemed to infer, although he did not specifically state, that because the deed was signed after the marriage, materiality was shown, and because the children grew up in the house, George would not want Cluney to have the house if he weren't legally married to her.

¶24.     The second witness was John Law, the administrator to the George Law estate and the "middle" son. John was asked the same general questions that Bill had already answered. Additionally, John was

---

[1]Cluney was criminally prosecuted in 2001 for perjury and bigamy based on the false statements made in depositions and before the court in this case. She pled guilty in a plea agreement and was sentenced to two suspended five-year sentences.

[2]Bill Law was asked to relate the following factual information to the court: the date of George and Cluney's marriage ceremony (stipulated by Cluney to be 1/8/94 - Bill was not present), the date of the warranty deed transfer (six months after the date of the marriage ceremony), when Cluney moved in with George (Sept. '92), how the deed was worded ("we, George w. Law and wife, Deloris Law, do hereby convey, warrant unto George W. Law and Wife, Deloris Law as joint tenants with the fill rights of survivorship and not as tenants in common."), when the original deed was signed (1977), who lived in the house (his younger siblings grew up there), and that George and his first wife with some help (no specific figures) from the children had been the ones who paid for the house until George's first wife's death.

asked if he had "an opinion about whether or not [George] would have ever signed a deed to Delores Cluney had he known he wasn't married to her?"[3] John responded:

> I wouldn't think so, because he had never known about this or I would have known about it a long time ago. We just thought -- at first when she came there, we felt sorry for her. She was company for an older, very lonely man. And I lived in Hatley and he would drive up there, which he was bad about seeing anyway, he was going blind even. And when she came, she was much his company.

> She had no money, no job, nothing. She lived out of the trash can, out of the green dumpsters, that's where we met her. She walked from the dumpster to her house. The little trailer they lived in walked past our backyard and that's how she came to know my dad.

¶25. This is the extent of the proof of fraud offered by John Law. Thus there was no evidence offered for elements 3, 4, 5, 7, 8, or 9. Moreover, the opposing party's contention that fraud was not proven was supported by substantial evidence.

¶26.    George Law's sister, Katherine Bowen, and his aunt, Rozema Munn, testified on Cluney's behalf. These women stated that they talked to George several times per week and daily after he was diagnosed with cancer. As to element (4), the speaker's knowledge of its falsity or ignorance of its truth, Bowen and Munn each testified that Cluney had the mental capacity of about a twelve year old, that she is easily confused, and that the Social Security Administration had appointed Bowen to help Cluney with her SSI finances because Cluney was not able to do this on her own. There was additional evidence in the record that Cluney's first marriage occurred 28 years earlier, when she was 17 years old; that she lived with her first husband for only one month; and that he had filed for divorce, but had never been granted one. It is quite conceivable that Cluney thought she was divorced. Munn testified that "in the state of her mind, I doubt she even remembered marrying him."

---

[3]Cluney's objection to this questioning was overruled, but this issue was not presented on appeal.

11

¶27.    As for element (5), her intent that [her misrepresentation] should be acted upon by the person and in the manner reasonably contemplated, Bowen and Munn each testified that George Law had told her that he wanted Cluney to have a home,[4] and that he was going to deed his house to her in return for Cluney taking care of him until he died. He told Munn this prior to the marriage and told Bowen this after the marriage. In fact, Cluney took care of him for seven years while he was in bad health, including the last year of his life when he was dying of cancer. Bowen and Munn testified that Cluney kept a very clean house and was devoted to George. They also testified that George Law had let each of them know that it was his intent to leave a separate tract of land to his children. In my view, it is much more reasonable to conclude that George Law would leave his modest home to his care giver, who would more than likely be homeless without it, in return for her companionship and care, than to conclude that he did so because he thought they had a valid marriage. It is also conceivable that Cluney did not have the mental capacity for the requisite intent required by element 5. In any event, no evidence was provided by John Law for these elements.

¶28.    Testimony from Bowen and Munn also suggests that George Law's children rarely visited him (this is contested by John Law, the only child who lives in the area), and that Cluney did a very good job keeping house and taking care of George for seven years, so much so that no external care was required during his final year when he was dying with cancer. This would suggest that Cluney's intentions were honorable, rather than simply a desire to gain property through fraud.

¶29.    Mississippi law requires that fraud be proven by clear and convincing evidence. This Court may not ignore law because we find the facts unpleasant. In this case, only fraud element numbers 1 and 2 were

---

[4] John Law objected to this line of questioning, but was overruled. This issue was not raised on appeal.

proven by clear and convincing evidence. The party alleging fraud offered no evidence for elements 4 or 5. There was no evidence offered from either side as to fraud elements 7, 8, or 9. The Court of Appeals came to the right conclusion, but erred in inferring the elements of fraud and not requiring each element to be proved by clear and convincing evidence. Because fraud was not proven by even a preponderance of the evidence, much less by clear and convincing evidence, I respectfully dissent.

**DICKINSON, J., JOINS THIS OPINION. EASLEY, J., JOINS IN PART.**