COBB, Presiding Justice,
Dissenting:
¶ 16. As stated by the majority, the Court of Appeals reversed the chancellor’s judgment, finding that fraud had not been proven by clear and convincing evidence. The majority concludes that the Court of Appeals’ analysis was improper because it used implications and inferences most favorable to Dolores Cluney in order to find that one of the elements of fraud was not proven. In my view, the Court of Appeals reached the right conclusion, but improperly used inferences to find that several elements of fraud did exist. Thus, I must respectfully dissent.
¶ 17. I write to clarify and correct the holding of the Court of Appeals for three reasons. First, I agree with the Court of Appeals that John Law failed to prove the elements of fraud by clear and convincing evidence. However, several of the fraud elements were not even proven by a preponderance of the evidence, because no evidence of these elements was presented at all.
¶ 18. Second, although the majority concedes that the trial court failed to make specific findings as to the elements of fraud, it asserts that “the assumption is that the trial court made sufficient findings of fact to support its decision.” When the record contains no evidence from which to assume sufficient findings of fact, this position is contrary to well established Mississippi law. “Fraud is never to be presumed or inferred, but must be proven by clear and convincing evidence.” Boling v. A-1 Detective & Patrol Serv., Inc., 659 So.2d 586, 590 (Miss.1995) (citing Nichols v. Tri-State Brick and Tile, Co., 608 So.2d 324, 330 (Miss.1992)). On appeal, the appellate court may reverse if substantial evidence does not support the findings of fact.
¶ 19. Finally, witnesses for Cluney provided substantial evidence that although Cluney had nothing when she met George Law, she helped him in a number of ways by caring for him in bad health, and providing companionship to a lonely old man. The evidence shows that George wanted Cluney to have a home after he died and deeded her a survivorship interest in his home in return for her caring for him until he died. With regard to the fraud elements for which the administrator supplied no opposing evidence, this testimony supports a ruling that fraud has not been proved by clear and convincing evidence.
¶ 20. This Court will not disturb a chancellor’s findings of fact unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). When a chancellor’s findings are supported by substantial, credible evidence in the record we will not reverse. Branton v. Branton, 559 So.2d 1038, 1042 (Miss.1990). But it is our responsibility to ensure that the trial court’s findings of fact conform to the required standard of proof. The chancellor correctly acknowledged that it is well settled law in this state that in the absence of fraud a voluntary conveyance cannot be set aside. Campbell v. *1033 State Highway Comm’n, 212 Miss. 437, 54 So.2d 654 (1951). As stated in Martin v. Winfield, 455 So.2d 762, 764 (Miss.1984), “proving fraud is difficult, as it ought to be. Clear and convincing evidence is required.” Id. (citing Cotton v. McConnell, 435 So.2d 683, 685-87 (Miss.1983); Franklin v. Lovitt Equipment Co. 420 So.2d 1370, 1373 (Miss.1982)).
¶ 21. A review of the record and testimony from the hearing on the issue of fraud shows that many of the elements were not proven by clear and convincing evidence. As discussed in the majority opinion, the elements of fraud are well established: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker’s knowledge of its falsity or ignorance of its truth; (5) the speaker’s intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer’s ignorance of its falsity; (7) the hearer’s reliance on the truth; (8) the hearer’s right to rely thereon; (9) and his or her consequent and proximate injury. See, e.g., Martin v. Winfield, 455 So.2d at 764; Hamilton v. McGill, 352 So.2d 825, 831 (Miss.1977); Crawford v. Smith Bros. Lumber Co., 274 So.2d 675, 678 (Miss.1973).
¶22. There is no doubt that the first two elements of fraud were proven. Clu-ney even stipulated that she was not legally married to George Law because she had not obtained a divorce from her first husband prior to her marriage to George and that she had concealed the prior marriage and lack of a divorce from George.[1] As to the remaining elements of fraud, there was scant evidence produced at trial.
¶ 23. John Law, the party alleging fraud, called two witnesses. The first was his brother, Bill Law, the oldest of six children, who had lived in Kansas for the past 20 years. None of his testimony related to elements three through nine of fraud, but generally concerned background information.[2] From this, John Law’s attorney seemed to infer, although he did not specifically state, that because the deed was signed after the marriage, materiality was shown, and because the children grew up in the house, George would not want Cluney to have the house if he weren’t legally married to her.
¶ 24. The second witness was John Law, the administrator to the George Law estate and the “middle” son. John was asked the same general questions that Bill had already answered. Additionally, John was asked if he had “an opinion about whether or not [George] would have ever signed a deed to Delores Cluney had he known he wasn’t married to her?”[3] John responded:
*1034 I wouldn’t think so, because he had never known about this or I would have known about it a long time ago. We just thought — at first when she came there, we felt sorry for her. She was company for an older, very lonely man. And I lived in Hatley and he would drive up there, which he was bad about seeing anyway, he was going blind even. And when she came, she was much his company.
She had no money, no job, nothing. She lived out of the trash can, out of the green dumpsters, that’s where we met her. She walked from the dumpster to her house. The little trailer they lived in walked past our backyard and that’s how she came to know my dad.
¶ 25. This is the extent of the proof of fraud offered by John Law. Thus there was no evidence offered for elements 3, 4, 5, 7, 8, or 9. Moreover, the opposing party’s contention that fraud was not proven was supported by substantial evidence.
¶26. George Law’s sister, Katherine Bowen, and his aunt, Rozema Munn, testified on Cluney’s behalf. These women stated that they talked to George several times per week and daily after he was diagnosed with cancer. As to element (4), the speaker’s knowledge of its falsity or ignorance, of its truth, Bowen and Munn each testified that Cluney had the mental capacity of about a twelve year old, that she is easily confused, and that the Social Security Administration had appointed Bowen to help Cluney with her SSI finances because Cluney was not able to do this on her own. There was additional evidence in the record that Cluney’s first marriage occurred. 28 years earlier, when she was 17 years old; that she lived with her first husband for only one month; and that he had filed for divorce, but had never been granted one. It is quite conceivable that Cluney thought she was divorced. Munn testified that “in the state of her mind, I doubt she even remembered marrying him.”
¶ 27. As for element (5), her intent that [her misrepresentation] should be acted upon by the person and in the manner reasonably contemplated, Bowen and Munn each testified that George Law had told her that he wanted Cluney to have a home,[4] and that he was going to deed his house to her in return for Cluney taking care of him until he died. He told Munn this prior to the marriage and told Bowen this after the marriage. In fact, Cluney took care of him for seven years while he was in bad health, including the last year of his life when he was dying of cancer. Bowen and Munn testified that Cluney kept a very clean house and was devoted to George. They also testified that George Law had let each of them know that it was his intent to leave a separate tract of land to his children. In my view, it is much more reasonable to conclude that George Law would leave his modest home to his care giver, who would more than likely be homeless without it, in return for her companionship and care, than to conclude that he did so because he thought they had a valid marriage. It is also conceivable that Cluney did not have the mental capacity for the requisite intent required by element 5. In any event, no evidence was provided by John Law for these elements.
¶ 28. Testimony from Bowen and Munn also suggests that George Law’s children rarely visited him (this is contested by John Law, the only child who lives in the area), and that Cluney did a very good job *1035 keeping house and taking care of George for seven years, so much so that no external care was required during his final year when he was dying with cancer. This would suggest that Cluney’s intentions were honorable, rather than simply a desire to gain property through fraud.
¶ 29. Mississippi law requires that fraud be proven by clear and convincing evidence. This Court may not ignore law because we find the facts unpleasant. In this case, only fraud element numbers 1 and 2 were proven by clear and convincing evidence. The party alleging fraud offered no evidence for elements 4 or 5. There was no evidence offered from either side as to fraud elements 7, 8, or 9. The Court of Appeals came to the right conclusion, but erred in inferring the elements of fraud and not requiring each element to be proved by clear and convincing evidence. Because fraud was not proven by even a preponderance of the evidence, much less by clear and convincing evidence, I respectfully dissent.
DICKINSON, J., JOINS THIS OPINION. EASLEY, J., JOINS IN PART.

. Cluney was criminally prosecuted in 2001 for perjury and bigamy based on the false statements made in depositions and before the court in this case. She pled guilty in a plea agreement and was sentenced to two suspended five-year sentences.

. Bill Law was asked to relate the following factual information to the court: the date of George and Cluney's marriage ceremony (stipulated by Cluney to be 1/8/94 — Bill was not present), the date of the warranty deed transfer (six months after the date of the marriage ceremony), when Cluney moved in with George (Sept. '92), how the deed was worded (“we, George w. Law and wife, Deloris Law, do hereby convey, warrant unto George W. Law and Wife, Deloris Law as joint tenants with the fill rights of survivorship and not as tenants in common.”), when the original deed was signed (1977), who lived in the house (his younger siblings grew up there), and that George and his first wife with some help (no specific figures) from the children had been the ones who paid for the house until George’s first wife’s death.

.Cluney’s objection to this questioning was overruled, but this issue was not presented on appeal.

. John Law objected to this line of questioning, but was overruled. This issue was not raised on appeal.