633 So.2d 1044 (1994)
William Roger MASSEY
v.
Earl MOORE d/b/a M & M Truck Sales.
No. 91-CA-00564.
Supreme Court of Mississippi.
Decided March 10, 1994.
*1045 Laurel G. Weir, Thomas L. Booker, Jr., Weir & Booker, Philadelphia, for appellant.
A.R. Wright, Jr., Wright & Phillips, Carthage, for appellee.
Before HAWKINS, C.J., and McRAE and JAMES L. ROBERTS, Jr., JJ.
HAWKINS, Chief Justice, for the Court:
William Roger Massey has appealed a jury verdict and judgment in favor of Earl Moore in the circuit court of Leake County. Massey argues on appeal that he was entitled to a directed verdict or J.N.O.V. We agree, and reverse and render judgment here for Massey.

FACTS
On January 27, 1990, Massey and Moore, both residents of Leake County, entered into a written contract for the sale of a 1972 GMC tractor-trailor truck for $4,000.00. Massey agreed in the contract to make a down payment of $500.00 and monthly installments of $500.00 starting on February 27, 1990. (The exact language was "to paid 500.00 each month till paid in full first payment Start Feb. 27-90".) The contract was signed by Earl Moore and his wife, Carolyn, as sellers and by Massey as buyer. Mrs. Moore wrote on the back of the contract, "Earl Moore will Hold 1972 GMC until paid in full 1-27-90" which Moore signed. The parties also agreed that Moore would hold the title to the truck until the truck was paid for.
On February 24 Massey paid $200.00 and on March 12 $300.00. No other payments were made. On September 4, Massey went to pay Moore to pay the remaining $3,000.00 due. Moore, however, had sold the truck to Raymond Reed for $3,999.00 the previous day, Labor Day, September 3, without notifying Massey. (Defendant's Exhibit 3 lists the buyer's name as Raymond Ray. Neither party, however, noted this discrepancy) Moore refused to refund the $1,000.00 that Massey had paid him but did offer him $1,000.00 in credit towards any other truck on the lot.
Many factual issues are disputed. According to Massey, even though Moore realized that he was not making the proper payments on time, "he told me everything was fine 'til my settlement comes in." Massey's wife, Kathy, testified that when she called to tell him they were still going to get the truck, Moore replied, "[D]on't worry about. [sic] You got it on writing that I'll hold it until paid in full." Eric Massey, the eleven-year-old son of Massey, testified that when he accompanied his father on a visit with Moore to discuss the Workers' Compensation settlement on August 23, 1990, Moore said, "Everything's all right. The truck will set right here until your settlement comes through."
According to Moore, the first time that he heard of the Workers' Compensation settlement was September 4, when Massey came to pay for the truck, and that he never agreed to hold the truck past August 27, 1990. Mrs. Moore testified that Massey never told them about his Workers' Compensation at any time before September 4, 1990.
*1046 As to the meaning of the words "Earl Moore Will Hold 1972 GMC until Paid in full 1-27-90," Massey testified he understood this to mean that Moore would hold the truck until it was fully paid for, even if it took longer than the time stipulated in the contract. Moore testified that he and his wife put this language in the contract to mean,
that I wouldn't run it out on the road with my other trucks. I'd hold it for him, you know, wouldn't wear it out. I could a wore it out in seven months and he wouldn't a had nothing if I hadn't held it for him. I held it for him like I told him I would. 'Til it had expired the date. Run out of the contract.
Moore went on to cite the truck's lack of insurance as another reason he wanted to hold on to the truck. It is clear from this testimony that Moore believed that he owed Massey no duty to keep the truck past the maturation date of the contract  August 27, the day the last payment was due. Also indisputed is that Moore gave Massey no notice he intended to sell the truck to someone else.
There was a jury verdict and judgment in favor of the defendant and Massey appeals.

LAW

THE LAYAWAY TRUCK
The arrangement in this case is reminiscent of a layaway type plan where one party agrees to hold the goods until the other fulfills an agreed upon payment plan. Such plans which concern the sale of goods are covered by Article 2 of the U.C.C.
Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers, or other specified classes of buyers.
Miss. Code Ann. § 75-2-102. See also Beck Enterprises, Inc. v. Hester, 512 So.2d 672 (Miss. 1987) (holding that Article 2 of the U.C.C. applies to sales of both new and used motor vehicles).
Massey's failure to make the payments required under the agreement constituted a breach of the contract and allowed Moore to take appropriate steps to limit his damages. Section 75-2-703 of the Mississippi Code Annotated says in part:
Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (Section 2-612) [§ 75-2-612], then also with respect to the whole undelivered balance, the aggrieved seller may ...
... .
(d) resell and recover damages as hereafter provided (Section 2-706) [§ 75-2-703]... .
The proper procedure for conducting a resale of goods following a breach is detailed in § 75-2-706:
(1) Under the conditions stated in Section 2-703 [§ 75-2-703] on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this chapter (Section 2-710) [§ 75-2-710], but less expenses saved in consequence of the buyer's breach.
(2) Except as otherwise provided in subsection (3) or unless otherwise agreed resale may be at public or private sale including sale by way of one (1) or more contracts to sell or of identification to an existing contract of the seller. Sale may be as a unit or in parcels and at any time and place and on any terms but every aspect of the sale including the method, manner, time, place, and terms must be commercially reasonable. The resale must be reasonably identified as referring to the broken contract, but it is not necessary that the goods be in existence or that any *1047 or all of then have been identified to the contract before the breach.
(3) Where the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell. (Emphasis added)
Moore's sale to Raymond Reed was a private sale. By not telling Massey of his intention to resell, Moore violated the notice requirement of § 75-2-706(3).
In Wood v. Downing, 243 Ark. 120, 418 S.W.2d 800 (Ark. 1967), the appellant Arnold Wood was holding a television for the appellee Ned Downing. Downing had initially paid $100.00 down and was to pay an additional $350.00 within 30 days. After Downing failed to make the payments, Wood sold the television to a third party without first notifying Downing. The Arkansas Supreme Court ruled that the sale fell under their version of U.C.C. § 2-706 and that as the seller conducted a private sale of the television without first notifying the buyer, the buyer was entitled to a refund of his previous payment.
The law expressed in Wood controls here. Moore's failure to give Massey reasonable notification of his intent to resell entitles Massey to a refund of the $1,000.00 theretofore paid on the truck.[1]
Reversed, and judgment rendered in favor of William Roger Massey in the amount of $1,000.00.
REVERSED, AND JUDGMENT RENDERED IN FAVOR OF WILLIAM ROGER MASSEY IN THE AMOUNT OF $1,000.00.
DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] If one were to construe the Massey-Moore agreement as creating a security interest in Moore under § 63-21-5, the result would be the same. At a private sale Moore sold the truck for $3,999.00, and would therefore owe Massey the $999.00 excess over the amount due under the agreement.