585 So.2d 725 (1991)
Kimberly Dawn GAST and Kim Alan Gast
v.
ROGERS-DINGUS CHEVROLET.
No. 89-CA-1218.
Supreme Court of Mississippi.
August 21, 1991.
*726 John S. Knowles, III, Brantley & Knowles, Jackson, for appellant.
Christopher A. Tabb, Brandon, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the Court:
Problems flowing from purchase of a used automobile are the basis of this action by Kim Alan and Kimberly Dawn Gast (Gasts) for breach of warranty and damages. The trial court set aside a jury verdict awarding damages and rendered a judgment notwithstanding the verdict in favor of Rogers-Dingus. We affirm.

I.
On April 10, 1986, the Gasts purchased from Rogers-Dingus Chevrolet a 1981 Pontiac Trans-Am automobile with a mileage reading of 58,644 for $5,200.00 plus sales tax of $156.00. The Gasts simultaneously purchased a General Motors Insurance Corporation Mechanical Repair Plan or MIC Repair Plan and an extended warranty on the vehicle. Rogers-Dingus assisted the Gasts in their financing through their "dealer arrangement" with Citizens Bank of Rankin County. Pursuant to this arrangement, Rogers-Dingus financed the purchase, except $550.00 paid by the Gasts as a down payment, procured from the Gasts an installment note in the total sum of $9,042.46 evidencing the unpaid portion of the purchase price and finance charges, and obtained a security interest in the vehicle. The documents were then assigned to Citizens Bank.
*727 The Gasts were assured by agents of Rogers-Dingus that the Trans-Am was a "good running car," yet from day one the Gasts encountered a series of mechanical problems with the vehicle. The tachometer was not working on the day of purchase, and Rogers-Dingus agreed to make the necessary repair. The speedometer cable broke within a month of the purchase with a mileage reading of 59,931 miles. The water pump soon ceased operation. This item, however, was replaced by friends of Mr. Gast because it was not covered by the extended warranty agreement.
The vehicle subsequently underwent repairs by Rogers-Dingus for a burned valve. In July, Mrs. Gast discovered a short in the turbo light, for which Rogers-Dingus replaced a fuse. On August 2, the automobile caught on fire resulting in severe damage to the under body and the turbo. Rogers-Dingus rebuilt the engine and replaced the turbo. Additional repairs were made to the vehicle in September.
The extended warranty paid $2,350.00 of the repair bills, the Gasts paid $686.00, and Rogers-Dingus absorbed the remaining $719.00. Rogers-Dingus, Mr. Gast and Ron Dear, an agent of Citizens Bank, met subsequent to the September repairs. At that time the Gasts no longer wanted the Trans-Am. Rogers-Dingus would not agree to a trade-in, and the bank desired assurance of payment. As a result of this meeting, Rogers-Dingus reassured the Gasts that the Trans-Am would be correctly fixed and the Gasts borrowed from Citizens Bank the amount necessary to pay their part of the repair bill. Citizens Bank made these funds available as an additional advance secured by their lien on the Trans-Am.
In February, 1987, the vehicle again required engine and turbo repairs. Rogers-Dingus made the repairs and the Gasts paid the $50.00 deductible required by the extended warranty agreement. The odometer showed a mileage reading of 65,448, and the Gasts refused to make further payments to the bank on their note. The bank, with the Gasts consent, took possession of the vehicle and sold it. The sales proceeds were applied by the bank to the Gasts' note. At the time of trial, the Gasts still owed the bank $6,000 or $7,000.
On August 26, 1987, suit was filed by Mrs. Gast against Rogers-Dingus for breach of implied warranties of merchantability and fitness for a particular purpose. The complaint was subsequently amended to include Mr. Gast as a co-plaintiff. Rogers-Dingus answered, denying breach of warranty and stated that the vehicle, while used, was in good mechanical condition and fit for personal transportation when sold. The cause was tried in September, 1989.
The jury returned a verdict for the Gasts in the sum of $5,819.54. Rogers-Dingus timely moved for judgment notwithstanding the verdict (j.n.o.v.) alleging that the Gasts failed to prove:
(a) The vehicle was unmerchantable when sold;
(b) The value of the vehicle when sold;
(c) The value of the vehicle at time of purchase according to Rogers-Dingus' representations;
(d) There was anything mechanically wrong with the automobile when purchased;
(e) Rogers-Dingus was provided a reasonable opportunity to cure the alleged defects;
(f) A non-conformity which substantially impaired the value of the vehicle; and
(g) Revocation of acceptance.
The trial court heard the motion and found that the Gasts failed to show revocation of acceptance, and failed to present evidence of damages in the manner required by law. The trial court thus sustained the motion of Rogers-Dingus, voided the judgment in favor of the Gasts, and granted Rogers-Dingus a judgment of dismissal notwithstanding the verdict. Aggrieved, the Gasts appeal asserting:
The trial court erred in entering a judgment notwithstanding the verdict based on the alleged failure of plaintiffs to show a revocation of acceptance of the vehicle and the failure to present evidence of damages in the manner required by law.

*728 II.
On appeal from a judgment notwithstanding the verdict, we consider the evidence in the light most favorable to the plaintiffs (Gasts), disregard evidence on the part of defendant (Rogers-Dingus) in conflict with that favorable to plaintiffs (Gasts), and if the evidence and reasonable inferences to be drawn therefrom would support a verdict for plaintiffs (Gasts), the jury verdict must be reinstated. Rester v. Morrow, 491 So.2d 204 (Miss. 1986); Black v. Peoples Bank and Trust Company, 437 So.2d 26, 28 (Miss. 1983); Gee v. Hawkins, 402 So.2d 825 (Miss. 1981); Blackwell v. Dairymen, Inc., 369 So.2d 511 (Miss. 1979); Pay Master Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).
The Gasts' complaint and theory of recovery is based on breach of the implied warranties of merchantability under Miss. Code Ann. § 75-2-314 (Supp. 1990) and fitness for a particular purpose under Miss. Code Ann. § 75-2-315 (Supp. 1990). Section 75-2-314 provides in part:
(1) A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind....
(2) Goods to be merchantable must be at least such as
* * * * * *
(c) are fit for the ordinary purposes for which such goods are used... .
Section 75-2-315 provides in part:
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill and judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose... .
Our case law holds that the implied warranties of merchantability and fitness for a particular purpose apply to sales of used vehicles. Beck Enterprises, Inc. v. Hester, 512 So.2d 672 (Miss. 1987). Moreover, the implied warranty of merchantability may not be waived or disclaimed. Miss. Code Ann. § 11-7-18 (Supp. 1990); Miss. Code Ann. § 75-2-719(4) (Supp. 1990).
Damages for breach of the implied warranties of merchantability and fitness for a particular purpose are allowable under two separate sections of our Uniform Commercial Code, Miss. Code Ann. § 75-2-711, 75-2-714 (Supp. 1990).

A.
Miss. Code Ann. § 75-2-711 (Supp. 1990) provides the measure of damages for breach of the implied warranty of merchantability when the buyer justifiably revokes acceptance. This section provides:
(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2-612) [§ 75-2-612], the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid
(a) "cover" and have damages under section 75-2-712 as to all the goods affected whether or not they have been identified to the contract; or
(b) recover damages for non-delivery as provided in this chapter (section 2-713) [75-2-713].
In this case "cover" and "non-delivery" of goods are not involved. Hence, damages, if allowable under this section, are necessarily restricted to recovery of the paid purchase price.
The uncontroverted proof at trial revealed a purchase price of $5,200.00 plus sales tax of $156.00. However, the Gasts failed to prove either revocation of acceptance or even notice of revocation, an essential element for recovery under § 75-2-711.
The Gasts maintain that their action in "turning the vehicle over to the bank" constituted proper revocation of acceptance in view of the bank's close working relationship and contractual ties with Rogers-Dingus. We think differently. The Gasts did not return the car to the dealer, but to the bank. Citizens Bank was not a party to *729 the litigation and the Gasts neither plead nor proved an agency relationship between the bank and Rogers-Dingus.
Moreover, a buyer is generally deemed to have accepted defective goods when, knowing of the defect, he resells the goods without notifying the seller. White and Summers, Uniform Commercial Code, § 8-2, p. 395 (2d ed. 1980); Eaton Corp. v. Magnavox Corp., 581 F. Supp. 1514 (E.D.Mich. 1984); Mohr v. Shultz, 86 Idaho 531, 388 P.2d 1002 (1964).
In this case, the Gasts' actions in declining to make the necessary payments and delivering the vehicle to the bank for sale with application of the sales proceeds to their benefit were contrary to any justifiable revocation of acceptance. See Miss. Code Ann. § 75-2-606(1)(c), § 75-2-608(2) (Supp. 1990).
Additionally, a buyer asserting the right to revoke acceptance invokes Miss. Code Ann. § 75-2-608(3) (Supp. 1990). In J.L. Teel Co., Inc. v. Houston United Sales, 491 So.2d 851 (Miss. 1986), we stated:
We begin with the UCC notion that a buyer who asserts a right to revoke acceptance has the same duties and obligations as a buyer who rejects goods before acceptance. Miss. Code Ann. § 75-2-608(3) (1972); See also Ramirez v. Autosport, 88 N.J. 277, 440 A.2d 1345, 1350-52 (1982). After rejection or revocation any exercise of dominion over goods may be considered wrongful as against the seller. Miss. Code Ann. § 75-2-602(2)(a) (1972); see also Miss. Code Ann. § 75-2-606(1)(c) (1972). This rule is designed to afford the seller the opportunity to recover possession of the non-conforming goods and unpaid-for use or dispose of them so as to minimize aggregate economic loss.
Finally, there is the issue of notice of revocation of acceptance. Section 75-2-608(2) explicitly precludes effective revocation of acceptance prior to notification to the seller. The Gasts contend that their action in turning the vehicle over to the bank, and its subsequent sale, was notification of revocation. We disagree. The record does not reflect that Rogers-Dingus was aware of this transaction. Moreover, this action was inconsistent with the seller's ownership and therefore could not constitute notice of revocation. Under § 75-2-606(1)(c) such action confirms acceptance. Mohr v. Shultz, supra; see also Griffith v. Stovall Tire & Marine, Inc., 174 Ga. App. 137, 329 S.E.2d 234, 236 (1985). In short, we find no evidence of notice prior to the institution of suit and service of summons. And notice by initiation of legal proceedings does not satisfy the statutory mandate.
In 67A Am.Jur.2d Sales § 1258 (1985), at page 664, the following comment is made concerning Uniform Commercial Code's requirements for notice of revocation of acceptance:
Commentators uniformly adopt the view that pleadings do not satisfy the notice requirement, pointing out that since the Code provides no remedy for a breach of the contract until the buyer has given notice, summons and complaint cannot constitute notice. It would appear that the obligation under the Code to act in good faith would require that the buyer not only give notice but do so under such circumstances that the seller might have the opportunity, if he desired to avail himself of it, to remedy his breach without the buyer's jumping into a lawsuit. It has also been noted that as a common sense rule, it is not within the spirit of fair play and liberal interpretation to consider the commencement of an action as the giving of notice under the Code.
While we are not willing to adopt a rigid rule mandating notice of revocation as a prerequisite to filing suit for breach of warranty under our Uniform Commercial Code, we do hold that in cases involving a series of complaints and attempted repairs pertaining to purchased goods embraced by the Code, notice of revocation prior to filing a complaint for breach of warranty for damages pursuant to Miss. Code Ann. § 75-2-711 (Supp. 1990) should be made.
We sympathize with the Gasts. Their initial endeavors to obtain the desired merchantability of the purchased product are *730 commendable. However, their subsequent actions in allowing the note payment to become delinquent and releasing the vehicle to the bank for sale with application of the proceeds to their benefit exterminated available remedies provided by § 75-2-711 of our Code.

B.
Section 75-2-714 governs damages recoverable by the buyer for breach with respect to goods as to which there has been an acceptance and no revocation of acceptance by the buyer. Anderson, Uniform Commercial Code, § 2-714:3, pp. 444-45 (3d ed. 1983). If the buyer accepts goods and fails to make an effective revocation of acceptance, his remedy is under § 75-2-714.[1] While revocation of acceptance is not required under § 75-2-714, the buyer remains under an obligation to notify the seller of a breach of warranty within a reasonable time after he discovers or should have discovered the breach.
Miss. Code Ann. § 75-2-714 (Supp. 1990) provides:
(1) Where the buyer has accepted goods and given notification (subsection (3) of Section 2-607)[2] [§ 75-2-607] he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
(3) In a proper case any incidental and consequential damages under section 75-2-715 may also be recovered.
We have searched the record for evidence sufficient to support an award of damages under § 75-2-714, but our efforts have gone unrewarded. The Gasts point to evidence establishing the purchase price paid for the vehicle, and inferences from the evidence which support their theory that the defective vehicle was essentially valueless. However, their argument is flawed. Mrs. Gast testified without contradiction as follows:
Q. Now did you pay Citizens Bank for the car? Did you pay the car out?
A. No, we didn't finish paying it off.
Q. What did you do with the car?
A. We give it back to Ron Dear at Citizens Bank.... We sold the car at an auction and applied the money to the money we owed... .
The Gasts offered no evidence to show either the amount received by the bank from sale of the vehicle and applied for the benefit of the Gasts to their note, or the value of the vehicle at the time of its sale.
This is not sufficient to support an award of damages under § 75-2-714. In Chaney v. General Motors Acceptance Corporation, 349 So.2d 519 (Miss. 1977), we stated:
The measure of damages recoverable for breach of warranty is established by Mississippi Code Annotated section 75-2-714 and 715 (1972). The basic rule is stated in section 75-2-714(2):
The measure of damages for breach of warranty is the difference at the time and place of acceptance between the *731 value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
The trial court specifically found that the Chaneys presented no proof as to this difference in value, and we cannot say that he erred.
The Gasts had the burden of proving damages sustained from breach of warranty by seller. This burden cannot be met by mere conjecture or inferences unsupported by adequate evidence. Having failed to submit requisite proof of damages, no recovery was permissible under § 75-2-714.

III.
After considering the evidence most favorable to the Gasts, we conclude that there are no facts upon which a jury could have found that the Gasts properly revoked acceptance of the vehicle and gave notice thereof in a manner sufficient to trigger damage entitlement pursuant to § 75-2-711. Likewise, there are no facts upon which a jury could have returned a verdict for damages under § 75-2-714. The trial court judge did not err in sustaining the motion for judgment notwithstanding the verdict, and the judgment rendered in accordance with his ruling should be affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., dissents without written opinion.
NOTES
[1] Installment contracts requiring or authorizing delivery of goods in separate lots to be separately accepted are excepted from this rule and remedies of the buyer are controlled by Miss. Code Ann. § 75-2-612 (Supp. 1990).
[2] Pertinent and relevant parts of Miss. Code Ann. § 75-2-607 (Supp. 1990) are as follows:

(2) Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this chapter for nonconformity;
(3) Where a tender has been accepted
(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and
(4) The burden is on the buyer to establish any breach with respect to the goods accepted.