# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00088-SCT

*FIDELITY FINANCIAL SERVICES, INC.*

*v.*

*CAROLYN RANDOLPH*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/94 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS CO. CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | W. N. PATTERSON |
| ATTORNEY FOR APPELLEE: | RICHARD J. JONES |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 2/27/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## INTRODUCTION

This case arises out of the August 5, 1992, sale of a repossessed vehicle by a secondary lender that sold over 110 repossessed cars per year. Carolyn Randolph (Randolph) -- after having failed to obtain financing from Fidelity Financial Services, Inc. (Fidelity) for the purchase of a car from a dealership -- was referred to Fidelity by the dealership's salesman for the purchase of a repossessed car.

Randolph, an elementary school teacher, bought a repossessed 1987 Chevrolet Celebrity from Fidelity. Two days later, the car broke down. Fidelity had the car towed and repaired. Less than a week later, the car again had problems. Fidelity's mechanic determined that the car needed a new engine at the cost of $1,800. Fidelity offered to pay 50 percent of the cost, but would not allow Randolph to finance the other 50 percent or to replace the car with a different vehicle. Randolph left the car at Fidelity's garage and (aside from her $500 down payment) never made a payment on the

car.

The key issues in this case are a) whether Fidelity was a "merchant" of used cars such that it was bound by the implied warranty of merchantability; b) whether Randolph properly revoked acceptance of the vehicle, and c) whether Randolph was entitled to attorney fees. This Court finds that all these questions are to be resolved in favor of the appellee, and affirms the judgment of the trial court.

## STATEMENT OF THE CASE

On December 22, 1992, Fidelity filed a complaint with the County Court of the First Judicial District of Hinds County and requested the balance owed after the sale of the car ($1,822.52) plus attorney fees ($607.50). Randolph counterclaimed for her $500 down payment, 10% of the principal plus the finance charge, and her attorney fees.

A trial was held September 21, 1993. The trial judge found that Fidelity a) was a merchant with respect to used automobiles, b) breached the implied warranty of merchantability, and c) was notified of the defect in the car. As a result, the trial judge held that Fidelity was not entitled to recover from Randolph. The trial judge also found that Randolph was entitled to a refund of her $500 down payment and to attorney fees in the amount of $2,246. Fidelity's motion for judgment notwithstanding the verdict or for a new trial was denied August 18, 1994.

Fidelity appealed to the Hinds County Circuit Court, which affirmed the judgment of the County Court. Specifically, the circuit judge found that Fidelity was a merchant within the meaning of the Uniform Commercial Code and that the findings of the trial judge were supported by the evidence. Fidelity appeals, and raises the following issues for consideration by this Court:

**I. Whether the trial court erred in determining that Fidelity was a merchant with respect to automobiles and applying the implied warranty of merchantability to its sale of repossessed automobiles under its security agreements?**

**II. Whether the trial court erred in finding that Randolph properly revoked acceptance under Mississippi Code of 1972, Annotated, Section 75-2-608 or Mississippi Code of 1972, Annotated, Section 75-2-711; in finding that the vehicle was not merchantable under Mississippi Code of 1972, Annotated, Section 75-2-314; and in finding that the burden of proof of damages as required under Mississippi Code of 1972, Annotated, Section 75-2-714 was made?**

**III. Whether the trial court manifestly erred in finding that Randolph established her counterclaim by a preponderance of the credible evidence?**

**IV. Whether the trial court erred in finding Randolph was entitled to an attorney fee and whether the calculation of the award was supported by the evidence?**

## LEGAL ANALYSIS

This Court has held that the implied warranty of merchantability set forth in the Uniform Commercial Code "applies to the sale of a used motor vehicle by a 'merchant with respect to goods of that kind.'" ***Beck Enterprises, Inc. v. Hester***, 512 So. 2d 672, 676 (Miss. 1987).

There are five elements which a plaintiff must prove to recover under section 75-2-314 [breach of an implied warranty of merchantability]: (1) That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury.

*Vince v. Broome*, 443 So. 2d 23, 26 (Miss. 1983).

**I. Whether the trial court erred in determining that Fidelity was a merchant with respect to automobiles and applying the implied warranty of merchantability to its sale of repossessed automobiles under its security agreements?**

Fidelity argues that no implied warranty of merchantability attached to its sale of the car because Fidelity was not a merchant within the meaning of the state statute. Mississippi's version of the Uniform Commercial Code provides as follows:

> **§ 75-2-314. Implied warranty: merchantability; usage of trade.**
>
> (1) A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
>
> (2) Goods to be merchantable must be such as . . .
>
> (c) are fit for the ordinary purposes for which such goods are used . . .

Miss. Code Ann. 75-2-314 (Supp. 1996).

Miss. Code Ann. § 75-2-104 defines a "merchant" as follows:

> "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Miss. Code Ann. § 75-2-104(1) (Supp. 1996).

However, this Court has held that, in cases of a breach of the implied warranty of merchantability,

> the definition of "merchant" is more limited than the general definition contained in [Miss. Code Ann.] section 75-2-104. *Siemen v. Alden*, 34 Ill. App. 3d 961, 341 N.E. 2d 713 (1975), states: "The definition of merchant within § 2-314 is a narrow one and that the warranty of merchantability is applicable only to a person who, in a professional status, sells the particular kind of goods giving rise to the warranty." There is an implied warranty only when a seller is a "merchant with respect to goods of that kind." The other definitions of merchants contained in section 75-2-104 do not apply to implied warranty suits.

*Vince v. Broome*, 443 So. 2d 23, 26-27 (Miss. 1983).

Whether a person is a merchant is a mixed question of law and fact, and "each case is determined individually based upon its particular factual situation. . . . Each case will be decided on its own facts." *Id.* at 28-29. "It is not the kind of business that makes a merchant a merchant, but rather it is the status of the person to the merchandise which is sold that assists in arriving at a conclusion as to whether or not a person is a merchant." *Id* at 27.

In this case, there is evidence that Fidelity had used cars for sale in its parking lot. Randolph was referred to Fidelity by a dealership -- after Fidelity declined to finance a car on the dealership's lot. Fidelity's representative, Brown, gave Randolph a "sales pitch" in which he represented that he had inspected and driven the car. Fidelity's County Line Road office sold over 110 used cars in that manner in 1993. That is, on average, Fidelity sold a car every third day or approximately every other business day. Given these facts, this Court finds that Fidelity was a "merchant with respect to goods of that kind."

Fidelity also argues that this sale was an "as is" sale. The record reflects that Randolph signed the buyer's order and disclosure statement or bill of sale, which read in part: "This motor vehicle is sold 'AS IS' with no guarantee as to performance or condition." However, Miss. Code Ann. § 75-2-315.1 provides as follows:

### § 75-2-315.1 Limitation of exclusion or modification of warranties to consumers.

(1) Any oral or written language used by a seller of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or to exclude the consumer's remedies for breach of those warranties, is unenforceable. However the seller may recover from the manufacturer any damages resulting from breach of the implied warranty of merchantability or fitness for a particular purpose.

* * *

(3)(a) The provisions of this section do not apply to a motor vehicle:

(i) Required to be titled under the state law;

(ii) That is over six (6) model years old or that has been driven more than seventy-five thousand (75,000) miles; and

(iii) If, at the time of the sale of the motor vehicle, the seller gives the purchaser notice of the inapplicability of this section on the form prescribed by the State Attorney General.

(b)(i) An exclusion or modification of an implied warranty of merchantability, or any part of a warranty under this subsection shall be in writing, mention merchantability, and be conspicuous.

(ii) An exclusion or modification of the implied warranty of fitness shall be in writing and conspicuous.

(iii) Any exclusion or modification of either warranty shall be separately acknowledged by the signature of the buyer.

Miss. Code Ann. § 75-2-315.1 (Supp. 1996).

Thus, the state statute prohibits the disclaimer of any implied warranties that ran with the sale of the car *sub judice*. The exception to that statutory prohibition is not applicable in the case at hand because the car was only five model years old and had been driven less than 70,000 miles. The "as is" language was on a page that was signed by Randolph; however, the "as is" language did not specifically mention the implied warranty of merchantability. Moreover, it is arguable whether the "as is" language was conspicuous. Therefore, Fidelity's "as is" disclaimer is invalid under Miss. Code Ann. § 75-2-315.1 (Supp. 1996).

**II. Whether the trial court erred in finding that Randolph properly revoked acceptance under Mississippi Code of 1972, Annotated, Section 75-2-608 or Mississippi Code of 1972, Annotated, Section 75-2-711; in finding that the vehicle was not merchantable under Mississippi Code of 1972, Annotated, Section 75-2-314; and in finding that the burden of proof of damages as required under Mississippi Code of 1972, Annotated, Section 75-2-714 was made?**

In the alternative, Fidelity argues that Randolph did not prove a) that the automobile was defective at the time of purchase, b) the amount of damages, if any, or c) that she revoked her acceptance of the vehicle. All of these are questions of fact. The fact-finder in this case was the county court judge. The decision of a trial judge sitting without a jury "falls under the manifest error standard of review." *Sweet Home Water and Sewer Association v. Lexington Estates, Ltd.*, 613 So. 2d 864, 871 (Miss. 1993). This Court "will not set aside such a finding unless it is clearly erroneous. Put otherwise, we will not vacate such a finding unless, although there is evidence to support it, we are on the entire evidence left with the definite and firm conviction that a mistake has been made." *Leatherwood v. State*, 539 So. 2d 1378, 1381 (Miss. 1989).

Clearly, there is evidence to support the trial judge's findings that the automobile was defective at the time of purchase. Less than 48 hours after the sale, the car had to be towed. Fidelity's own mechanics found that the car needed a new starter, battery, and engine. No vehicle is suitable for transportation without a working starter, battery, and engine. Less than a week after the starter and battery were replaced, the car broke down again. The car needed a new engine. Given these facts, it cannot be said that the trial judge committed manifest error by holding that the car was defective at the time of purchase.

With regard to the amount of damages, Fidelity asserts that the trial court erred in awarding Randolph her $500 down payment. Fidelity argues that Randolph is entitled to the difference in the value of the car as sold and the value of the car as warranted under Miss. Code Ann. § 75-2-714.[1] However,

> Damages for breach of the implied warranties of merchantability and fitness for a particular purpose are allowable under two separate sections of our Uniform Commercial code, Miss. Code Ann. § 75-2-711, 75-2-714 (Supp. 1990).
>
> * * *
>
> Miss. Code Ann. § 75-2-711 (Supp. 1990) provides the measure of damages for breach of the

implied warranty of merchantability when the buyer justifiably revokes acceptance. This section provides:

(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2-612 [§ 75-2-612], the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

(a) "cover" and have damages under section 75-2-712 as to all the goods affected whether or not they have been identified to the contract; or

(b) recover damages for non-delivery as provided in this chapter (section 2-713) [75-213].

In this case "cover" and "non-delivery" are not involved. Hence, damages allowable under this section are necessarily restricted to the recovery of the paid purchase price.

*Gast v. Rogers-Dingus Chevrolet*, 585 So. 2d 725, 728 (Miss. 1991).

It is undisputed that the only payment Randolph made on the vehicle was the $500 down payment. Thus, the trial judge properly awarded Randolph $500 under Miss. Code Ann. § 75-2-711. *See Id.*

Fidelity's final contention on this point is that the trial court erred in finding that Randolph revoked acceptance of the vehicle. In order to recover under Miss. Code Ann. § 75-2-711, Randolph was required to prove revocation of acceptance of the car. *Gast*, 585 So. 2d at 728; Miss. Code Ann. §75-2-711 (Supp. 1996).

The evidence reflected that, less than a week after the first repairs were made to the car, the car broke down again. The car was towed to the shop used by Fidelity, and Fidelity informed Randolph that the engine needed to be replaced at a cost of $1,800. Fidelity offered to pay $900 or 50 percent of the repair. Randolph asked if she could finance the $900 and Fidelity declined. She asked if Fidelity would replace the car and Fidelity declined.

Randolph eventually left the car at the shop used by Fidelity to repair and store the repossessed cars because she "did not get any relief from Fidelity". She did not notify Fidelity that she was not going to make any more payments on the car. She never made any further payment on the car, "[b]ecause the car was giving [her] all kind of trouble, and [she] did not get any comfort from Fidelity in what they would do to help [her] repair the car."

The question is whether, given these facts, the trial court committed manifest error by finding that Randolph revoked acceptance of the automobile. There are two Mississippi cases involving this issue:

In *Gast v. Rogers-Dingus Chevrolet*, 585 So. 2d 725 (Miss. 1991), the buyers declined to make the necessary payments on the car and delivered the car to the bank for sale. *Gast*, 585 So. 2d 729. This Court held that those actions were not sufficient to revoke acceptance. However, *Gast* can be distinguished from the case at hand in that the buyers returned the vehicle to the bank/lienholder for the application of the sales proceeds inuring to the buyers' benefit. The court held that such actions did not amount to revocation of acceptance to the seller. In *Gast*, the bank/lienholder was NOT the

seller, as is the case *sub judice*.

In the second case, ***Royal Lincoln-Mercury v. Wallace***, 415 So. 2d 1153, 1161 (Miss. 1982), the buyer told the seller he was dissatisfied with the car and offered to trade the car for a new one. The seller declined. The buyer indicated that he would contact his lawyer, and the seller advised that they would meet in court. Thereafter, the buyer used the vehicle and additional efforts were made to cure the defects. However, this Court held that the buyer's "prior intention of revocation was revitalized when he parked the automobile within the 12 months and 12,000 mile warranty period and filed suit." ***Royal***, 415 So. 2d at 1028-29. The ***Royal*** court would not disturb the jury's determination on these facts that the buyer had revoked acceptance.

In the case at hand, Randolph asked for the necessary repairs or for a replacement car. When Fidelity declined to do either, she left the car at the shop Fidelity used for repairs and storage of the used vehicles -- where the vehicle had been towed after the defective engine broke down. Randolph made no further payments.

There is even stronger evidence of revocation in this case than that found in ***Royal***. ***See Id.*** Randolph asked for repairs or replacement. When Fidelity refused to do either, she left the vehicle at the shop where it had been towed by Fidelity -- a shop which Fidelity used to repair and store its repossessed vehicles. Randolph did not -- as the buyer in ***Royal*** -- use the car thereafter. She did not -- as the buyer in ***Royal*** -- park the car on her own property; rather, she left it at the place where Fidelity had towed the vehicle. Therefore, given the decision in ***Royal***, and given the deferential standard of review, the trial judge did not commit manifest error by finding that Randolph revoked acceptance of the vehicle. Thus, Randolph's recovery of the purchase price paid under Miss. Code Ann. §75-2-711 was proper.

### III. Whether the trial court manifestly erred in finding that Randolph established her counterclaim by a preponderance of the credible evidence?

Fidelity also contends that Randolph failed to produce any evidence regarding her counterclaim. However, Fidelity does not cite any authority in support of this assertion. Failure to cite authority precludes consideration of the issue on appeal. ***Grey v. Grey***, 638 So. 2d 488, 491 (Miss. 1994) (citing ***Matter of Estate of Mason v. Fort***, 616 So. 2d 322, 327 (Miss. 1993)). In addition, as stated earlier, Randolph's claim for breach of the implied warranty of merchantability was meritorious.

### IV. Whether the trial court erred in finding Randolph was entitled to an attorney fee and whether the calculation of the award was supported by the evidence?

Fidelity's final argument is that, because Randolph should not have prevailed on her counterclaim, she was not entitled to attorney fees. The merits of Randolph's counterclaim have already been discussed, and the trial judge did not err in finding that Randolph's counterclaim was meritorious.

Fidelity also contends that Randolph put on no proof regarding attorney fees. The record reflects that an extensive, separate hearing was held in the trial court on the amount of attorney fees. Fidelity's witness testified that Randolph's bill for attorney fees was "padded" in the amount of at least $1,500. The trial judge ruled that the $3,077 originally submitted by Randolph's attorney was "a little" unreasonable, and awarded Randolph $2,246 in attorney fees. Fidelity argues that, assuming an

award of attorney fees was proper, this Court should reduce the amount of attorney fees to a reasonable amount.

This Court has held that attorney fees are allowed in these cases under the Magnuson-Moss Warranty Act. *Royal*, 415 So. 2d 1024, 1027 (citing 15 U.S.C. § 2310(e)). That statute provides that attorney fees are to be determined by the court. *Volkswagen of America, Inc. v. Novak*, 418 So. 2d 801, 804 (Miss. 1982) (citing 15 U.S.C. § 2310(d)(2)).

> [A] buyer who successfully sues for breach of warranty may recover litigation expenses under the Magnuson-Moss Warranty Act codified at 15 U.S.C. § 2301-2312 (1982). Section 2310(d)(2) of 15 U.S.C. provides:
>
> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

*Beck Enterprises v. Hester*, 512 So. 2d 672, 677 (Miss. 1987).

Randolph presented evidence of her attorney fees based on attorney time sheets. The trial judge awarded those fees in the amount deemed reasonable -- which was actually less than the amount Randolph requested. There is no evidence that the trial judge abused his discretion in awarding $2,246 for the commencement and trial of Randolph's defenses and counterclaim in this UCC case. Therefore, the award of attorney fees in this case was proper. *See Id.*

## CONCLUSION

Fidelity was a "merchant" within the meaning of the UCC with regard to the sale of the car at issue in this case. Therefore, the warranty of merchantability was implied in this sale and Fidelity's attempted disclaimer of that warranty was invalid. There was nothing in the record to suggest that the trial court committed manifest error in its findings that: a) the automobile was defective at the time of purchase, b) the amount of damages was the paid purchase price of $500, or c) Randolph revoked her acceptance of the vehicle. Therefore, Randolph properly proved her counterclaim for the breach of the implied warranty of merchantability. Furthermore, the award of attorney fees in this case was proper under the Magnuson-Moss Warranty Act. Therefore, the judgment of the trial court awarding the paid purchase price of $500 and attorney fees of $2,246 was proper and is affirmed.

**JUDGMENT IS AFFIRMED.**

**SULLIVAN, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. Miss. Code Ann. § 75-2-714 (2) provides that:

> The measure of damages for breach of warranty is the difference at the time and place of

acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

Miss. Code Ann. § 75-2-714(2) (Supp. 1996).