# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-CA-00786 COA

**JAMES I. ADAMS**                                                          **APPELLANT**

**v.**

**INSTITUTE OF COMMUNITY SERVICES, INC.**                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/97 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES VICTOR MCTEER |
| | J. KEITH PEARSON |
| | BENNIE LE NARD RICHARD |
| ATTORNEY FOR APPELLEE: | WILLIAM F. SCHNELLER |
| | LESTER F. SUMNERS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | TRIAL COURT SET ASIDE $80,000 VERDICT IN FAVOR OF APPELLANT, GRANTING APPELLEE JNOV. |
| DISPOSITION: | AFFIRMED - 11/24/98 |
| MOTION FOR REHEARING FILED: | 12/7/98 |
| CERTIORARI FILED: | 2/9/99 |
| MANDATE ISSUED: | 4/29/99 |

BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:

¶1. James I. Adams appeals the circuit court's grant of a JNOV to the Institute of Community Services, Inc., raising the following issues as error:

> **I. THE CIRCUIT COURT ERRED IN GRANTING A JNOV TO THE INSTITUTE OF COMMUNITY SERVICES, INC. BECAUSE AN EMPLOYEE WITH AN UNWRITTEN**

**EMPLOYMENT CONTRACT FOR AN INDEFINITE PERIOD MAY PURSUE A CLAIM FOR WRONGFUL DEMOTION OR DISCHARGE AGAINST AN EMPLOYER WHO REPRESENTS OR ACKNOWLEDGES A DUTY OF GOOD FAITH AND/OR FAIR DEALINGS IN EMPLOYMENT TO SAID EMPLOYEE.**

**II. THE CIRCUIT COURT ERRED IN HOLDING THAT EVIDENCE AND REASONABLE INFERENCES SUPPORTING THE PLAINTIFF'S CLAIMS WERE SO LACKING THAT NO REASONABLE JUROR COULD FIND FOR PLAINTIFF CONSIDERING ALL THE FACTS HEREIN IN THE LIGHT MOST FAVORABLE TO PLAINTIFF AND DISREGARDING EVIDENCE PRESENTED BY DEFENDANT IN CONFLICT WITH THE EVIDENCE FAVORABLE TO PLAINTIFF.**

**III. THE CIRCUIT COURT ERRED IN GRANTING A JNOV TO THE INSTITUTE OF COMMUNITY SERVICES, INC. BECAUSE REASONABLE JURORS COULD FIND THE DEFENDANT DID NOT ACT IN GOOD FAITH OR FAIR DEALING WITH ADAMS BASED UPON THE TESTIMONY OF ADAMS AND OTHERS.**

**IV. THE CIRCUIT COURT ERRED IN GRANTING A JNOV TO THE INSTITUTE OF COMMUNITY SERVICES, INC. CONSIDERING ADAM'S TESTIMONY THAT HIS DEMOTION AND TERMINATION WERE UNFAIR AND WITHOUT JUST CAUSE.**

¶2. Finding no error, we affirm.

**FACTS**

¶3. The Institute of Community Services, Inc. (ICS) is a private nonprofit organization which operates Head Start programs and whose primary purpose is to provide comprehensive child development services for poor children and families. ICS is funded by the federal government. James I. Adams was hired by ICS in 1969 to serve as the chief financial officer for the organization at the request of Executive Director Arvern Moore. Adams resigned from his position of ten years as a school teacher with a local school district to take the position with ICS. There was no written employment contract.

¶4. In 1982, Moore took a leave of absence from ICS for a full year. Moore chose Adams to serve as acting executive director during this time. Upon Moore's return to ICS, the relationship between Moore and Adams progressively deteriorated. Moore began grading Adams poorly on evaluations, and Adams was criticized by Moore for various delinquencies in his job performance.

¶5. At the behest of Moore, a reorganization of ICS was begun in February 1990. The position of chief financial officer was eliminated, and the business and field operations were combined. Adams was reassigned to the position of parent involvement coordinator at a salary of $22,000 per year. As chief financial officer, Adams was paid $35,069 per year. Under the reorganization of ICS none of ICS's other 400 employees experienced a pay cut except Adams. Adams unsuccessfully appealed this demotion through ICS's appeal process.

¶6. Under the new position, Adams no longer reported directly to Moore. However, Adams's new supervisor began making complaints about Adams. Adams protested that he was not allowed to carry out his new job duties for he was barred from visiting all the Head Start centers. Furthermore, Adams complained he was forced to do a variety of manual labor tasks not listed on his job description, including

cleaning commodes and lawn work. Effective July 1991, the position of parent involvement coordinator was eliminated, and Adams was not offered other employment with ICS. After leaving ICS, Adams taught school earning approximately $24,000 per year.

¶7. In May 1991, Adams filed suit alleging that ICS and Moore had wrongfully demoted and discharged him. ICS and Moore answered the complaint, and in so doing, admitted they owed Adams a duty of good faith and fair dealing in his employment with ICS. On the first day of trial, ICS and Moore tried to amend their answer claiming they did not owe Adams a duty of good faith and fair dealing. However, this motion was denied. ICS and Moore pursued a pretrial motion for summary judgment and a motion for directed verdict at the close of the case, but both were denied by the trial court. After deliberations, the jury returned a verdict for Adams in the amount of $80,000. ICS and Moore then filed a motion for a judgment notwithstanding the verdict. This motion was granted and judgment entered for ICS and Moore. From this decision Adams appeals.

### ANALYSIS

### I.

**THE CIRCUIT COURT ERRED IN GRANTING A JNOV TO THE INSTITUTE OF COMMUNITY SERVICES, INC. BECAUSE AN EMPLOYEE WITH AN UNWRITTEN EMPLOYMENT CONTRACT FOR AN INDEFINITE PERIOD MAY PURSUE A CLAIM FOR WRONGFUL DEMOTION OR DISCHARGE AGAINST AN EMPLOYER WHO REPRESENTS OR ACKNOWLEDGES A DUTY OF GOOD FAITH AND/OR FAIR DEALINGS IN EMPLOYMENT TO SAID EMPLOYEE.**

### II.

**THE CIRCUIT COURT ERRED IN HOLDING THAT EVIDENCE AND REASONABLE INFERENCES SUPPORTING THE PLAINTIFF'S CLAIMS WERE SO LACKING THAT NO REASONABLE JUROR COULD FIND FOR PLAINTIFF CONSIDERING ALL THE FACTS HEREIN IN THE LIGHT MOST FAVORABLE TO PLAINTIFF AND DISREGARDING EVIDENCE PRESENTED BY DEFENDANT IN CONFLICT WITH THE EVIDENCE FAVORABLE TO PLAINTIFF.**

### III.

**THE CIRCUIT COURT ERRED IN GRANTING A JNOV TO THE INSTITUTE OF COMMUNITY SERVICES, INC. BECAUSE REASONABLE JURORS COULD FIND THE DEFENDANT DID NOT ACT IN GOOD FAITH OR FAIR DEALING WITH ADAMS BASED UPON THE TESTIMONY OF ADAMS AND OTHERS.**

### IV.

**THE CIRCUIT COURT ERRED IN GRANTING A JNOV TO THE INSTITUTE OF COMMUNITY SERVICES, INC. CONSIDERING ADAM'S TESTIMONY THAT HIS DEMOTION AND TERMINATION WERE UNFAIR AND WITHOUT JUST CAUSE.**

¶8. Adams argues that Mississippi has always asserted an employment-at-will relationship can be modified

by an acknowledged duty or privilege afforded an employee by an employer. ***Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1086 (Miss. 1987).** In *Perry*, according to Adams, the Mississippi Supreme Court held that a written contract can be modified by a policy handbook which then becomes part of the contract, but only where the contract expressly provides that it will be performed in accordance with the policies, rules, and regulations of the employer. ***Perry*, 508 So. 2d at 1088.** Furthermore, Adams points out that the Mississippi Supreme Court has emphatically stated, "We hold the employer to its word." ***Bobbitt v. The Orchard, Ltd.*, 603 So. 2d 356, 361 (Miss. 1992)**.

¶9. Adams acknowledges that in this case there was no specific written employment contract specifying the length of employment. However, Adams points to the fact that ICS admitted an express duty of good faith and fair dealing. Adams contends that an admitted express duty or privilege, similar to a personnel manual in *Perry*, "can create contractual obligations, even in the absence of a written agreement." ***Perry*, 508 So. 2d at 1088.** Under these unique circumstances, Adams maintains that ICS and Moore had a duty to be fair and honest in all their dealings with him.

¶10. Therefore, Adams asserts that it was improper of the trial court to set aside the jury verdict because sufficient evidence existed showing that (1) ICS and Moore breached their duty to Adams; (2) ICS's and Moore's decision to terminate Adams was unfair; (3) the charges levied against Adams were untrue; (4) Adams was not provided a fair opportunity to perform his job tasks in the new position; (5) Adams was unfairly assigned menial job tasks outside of the framework of the job description; (6) Adams was the victim of bad intent of ICS and Moore; and (7) Moore engaged in a plan to rid himself of Adams, a person whom he believed to be an eventual competitor for the executive director's job.

¶11. "A Motion for JNOV tests the legal sufficiency of the evidence supporting the verdict." ***Tharp v. Bunge Corp.*, 641 So. 2d 20, 23 (Miss. 1994)** (citing *Goodwin v. Derryberry Co.*, 553 So. 2d 40, 42 (Miss. 1989)); ***Stubblefield v. Jesco, Inc.*, 464 So. 2d 47, 54 (Miss. 1984))**. The movant asks the trial court to hold, as a matter of law, that the verdict cannot stand. *Id*. "The trial court must consider the evidence of the non-moving party in the light most favorable to the non-moving party and give that party the benefit of all favorable inferences that reasonably may be drawn." *Id*. The motion for a JNOV must be denied if the evidence is sufficient to support a verdict in favor of the non-moving party. *Id.* (citing *Goodwin*, 553 So. 2d at 42-43). "On appeal from a judgment notwithstanding the verdict, we consider the evidence in the light most favorable to the plaintiffs, disregard evidence on the part of defendant in conflict with that favorable to plaintiffs, and if the evidence and reasonable inferences to be drawn therefrom would support a verdict for plaintiffs, the jury verdict must be reinstated." ***Gast v. Rogers-Dingus Chevrolet*, 585 So. 2d 725, 727 (Miss. 1991)** (citations omitted).

¶12. It is undisputed in this case that Adams had no written contract of employment and that his employment was for an indefinite term. Time and again our supreme court has delineated that:

> Mississippi follows the common law rule that a contract of employment for an indefinite term may be terminated at the will of either party. The employee can quit at will; the employer can terminate at will. This means either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract.

***Bobbitt*, 603 So. 2d at 360** (quoting *Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d 874 (Miss. 1981)) .

¶13. Adams had no written contract and was hired for an indefinite period of time, and therefore, he was an "at will" employee subject to termination for "a good reason, a wrong reason, or no reason." Nevertheless, Adams insists that ICS's and Moore's answer to his complaint afforded him good faith and fair dealing preventing his discharge under the circumstances of this case, and thus entitled him to damages for lost wages. Adams bases his argument on a reading of *Perry* and *Bobbitt.* The cases cited by Adams, however, deal with specific detailed written policy handbooks or manuals, which became part of the employee contract, and thus created obligations for the employer. Adams does not base his claim on any right to administrative remedies pursuant to ICS's policy manual, but instead bases his entire claim on ICS's and Moore's admitted duty to treat him fairly. Such a duty does not create a tenure or create any right to a specific term of employment.

¶14. It appears that Adams is trying to recover damages for breach of the covenant of good faith and fair dealing. As our supreme court observed in *Perry*:

> Wrongful discharge actions, not founded on some theory of contract essentially sound in tort, although some of the theories have attributes associated with both contract and tort. Of these hybrids, the most prominent, (though as yet a small minority view), is the theory of the implied covenant of good faith and fair dealing. Any breach of this implied covenant by malicious termination or harassment is said to give the victim a tort action for wrongful discharge. This seems to be the theory most closely resembling the posture of appellant's brief, which lays great emphasis on the malice of Porter's conduct towards Perry.

*Perry*, 508 So. 2d at 1089.

¶15. Our supreme court in *Perry* rejected adopting such a rule. *Id*. Adams emphasized in his brief the fact that he was the victim of malice and hostility from Moore. He insists that ICS's and Moore's expressed duty to treat him fairly was breached when they began treating him badly with the intent to get rid of him resulting in his demotion and eventually termination. However, what Adams fails to realize is that our supreme court has held that "every contract contains an implied covenant of good faith and fair dealing." *Merchants & Planters Bank v. Williamson*, 691 So. 2d 398, 405 (Miss. 1997) (quoting *UHS-Qualicare v. Gulf Coast Com. Hosp.*, 525 So. 2d 746, 757 (Miss. 1987)). Such a covenant has never precluded our supreme court from holding that an "at will" relationship means that "either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract." *Empiregas, Inc. of Kosciusko v. Bain*, 599 So. 2d 971, 974 (Miss. 1992) (citing *Kelly v. Mississippi Valley Gas Company*, 397 So. 2d 874, 875 (Miss. 1981)).

¶16. Our supreme court has never adopted the claim of right which Adams now asserts, and we are constrained to follow its precedent. Adams was an at will employee and therefore ICS had every right to discharge him at any time. Even considering all evidence in the light most favorable to Adams, the verdict by the jury cannot stand. These issues are without merit.

**¶17. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**BRIDGES, C.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. McMILLIN, P.J., NOT PARTICIPATING.**